11b 435
90  196
11b 435
93   46
11b 435
d102 357

CASE 37—PETITION EQUITY—OCTOBER 16.

## Brown, &c. v. Trustees of Catlettsburg.

### APPEAL FROM BOYD CIRCUIT COURT.

1. INJUNCTION AGAINST MUNICIPAL AUTHORITIES — WHEN AUTHORIZED; WHEN NOT.—Courts of equity will not interfere to prevent municipal authorities from making illegal uses of their powers, or restrain them from attempted enforcement of unauthorized municipal regulations or ordinances, unless it should become necessary to prevent a multiplicity of suits or irreparable injury, or unless the proceeding sought to be annulled or corrected is valid upon its face, and the alleged invalidity consists in matters to be established by extrinsic evidence.  (5 Wallace, 413.)

2. A special act of the legislature authorized certain persons to erect and keep a wharf in Catlettsburg, and after they had constructed it an ordinance of the town was adopted requiring all boats arriving in port to land at the public landing, unless a permit to land elsewhere was secured.  They brought this suit in equity to restrain the town authorities from enforcing the ordinance, which they claimed to be void, and its enforcement injurious to their business.  *Held*, that the suit can not be regarded as one to quiet title; and an injunction being the only relief sought, it was properly dismissed by the circuit court.

ELLIOTT, PRICHARD & BROWN,  .  .  .  For Appellants,

CITED

Acts 1871, vol. 2, p. 123.
Revised Statutes, 2 Stanton, p. 102.
Herman on Estoppel, 509.
Bigelow on Estoppel, 502.

Littell's Sel. Ca. 299, Robertson v. Smith's heirs.
High on Water-courses, 202.
3 Mon. 143.　　　　　　　　1 Littell, 147.
1 McCord's Rep. 508.　　　1 Mon. 97.
3 Bush, 269, Berry v. Snyder.
8 Bush, 326, Miller, &c. v. Hepburn.
8 B. Mon. 236, Rowan's ex'rs v. Town of Portland.
1 Mar. 62, McGee v. Morgan.
2 Mar. 15, Phillips v. Rothwell.
3 Litt. 382, Hinton v. Fox.
7 Mon. 569, Speed v. Braxdell.
2 Met. 221, Phillips v. Cov. & Cin. Bridge Co.
2 Met. 146, Chiles v. Drake.
3 Met. 566, Johnson v. Higgins.
8 Watts, 474, Covert v. O'Conner.
4 Wis. 486, Walker v. Shepardson.
1 Dillon on Municipal Cor. p. 191, secs. 67, 195.
2 Bush, 477, City of Columbus v. Grey.
2 Story's Eq., sec. 859.
3 Iowa, 1, McManus v. Carmichael.
12 B. Mon. 488, Armitage v. Wickliffe.
12 B. Mon. 380, Dorch v. Thompson.
18 Ohio, 94, McGlaughlin v. Stephens.
10 Wall. 504, Yates v. Milwaukee.
16 Pick. 125, Austin v. Murray.
10 Iowa, 107, Grant v. Davenport.
10 B. Mon. 159, Grace v. Mercer.
32 Iowa, 106, Tomlin v. Dubuque, &c.
12 B. Mon. 610, Dudley v. Trustees of Frankfort.

L. T. MOORE, . . .  
W. C. IRELAND, . . ⎬ . . . . . . . . For Appellees,  
W. H. WADSWORTH,

CITED

Const. of Ky., art. 2, sec. 37, Bill of Rights, sec. 1.
8 B. Mon. 258, Rowan v. Portland.
7 Cowen, 349, Vanderbilt v. Adams.
8 Johns. 418, Buck, &c. v. Sedbury.
1 Jones, 49, City of Raleigh v. Sorrell.
7 Iowa, 102, City of Davenport v. Kelly.
1 Black, 31, Dutton, &c. v. Strong, &c.
7 Wall. 272, Railroad Co. v. Schurmeir.
10 Wall. 497, Yates v. Milwaukee.

21 Wall. 393, Atlee v. Packet Co.
12 How. 312, Cooley v. Port Wardens of Phila.
10 Bush, 64, Bowling Green v. Carson.
14 Wend. 87, Stokes v. City of New York.
11 Pick. 168, Nightingale petition.
32 Iowa, 82, Dubuque v. Stout.
10 Wend. 100, Buffalo v. Webster.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

It is claimed, and for the purposes of this litigation it will be assumed, that O. C. Bowles and George N. Brown were the owners of certain lots of land situate within the corporate limits of the town of Catlettsburg, fronting on the Big Sandy River, and extending to low-water mark.

On the 15th of March, 1871, an act of the Kentucky legislature, entitled "an act for the benefit of O. C. Bowles and George N. Brown and their associates, lessees, and vendees," was approved. By this act the beneficiaries were authorized and empowered to grade the bank of the river in front of their lots, so as to construct an easy passway for loaded vehicles, to erect a wharf, and to fix fastenings therein for steamboats and other craft, and to collect fees and wharfage from vessels landing, not to exceed those collected at the wharf owned by the town of Catlettsburg.

The sixth section of the act provides that "the wharf and landing herein described shall not be subject to be condemned by the board of trustees of the town of Catlettsburg or the corporate authorities of said town, but shall be free from their control in any manner."

Afterward Bowles sold and transferred his interest in these lots to Colbert Cecil, sen. Brown and Cecil, the present owners, by petition in equity complain that after they had availed themselves of the privileges intended to be granted by this act, and by the expenditure of a large sum of money had graded the river bank and constructed permanent and substantial wharves and landings and prepared fully to accommodate ves-

sels plying upon the Big Sandy River, the corporate authorities of the town of Catlettsburg, for the purpose of harassing them, and the owners and commanders of steamboats desiring to land at their wharf, passed an ordinance designating the public landing of the town as the steamboat landing, and requiring all steamboats arriving in port to land thereat, and at no other place within the corporate limits of the town "except by the written consent of the wharf-master," and imposing a penalty of ten dollars jointly and severally upon the owners, controllers, or masters of any boat violating said inhibition.

They complain further that the corporate authorities are attempting to enforce this ordinance, and that they have caused their police judge to issue warrants against the owners and commanders of the several steamboats that land at their wharf, and aver that by thus slandering their title and right as wharf-owners, and by overawing and annoying the owners and commanders of boats, they have caused several of them to refuse further to patronize their wharf, to their great and irreparable injury.

It is claimed that the charter of the town does not empower the trustees to pass such an ordinance, and it is insisted that it is void and inoperative.

It is also charged that the public wharf is not extensive enough at all times to accommodate boats desiring to land for the purpose of delivering and receiving freight, and the complainants insist that on this account the ordinance is unreasonable and oppressive, and should be held to be inoperative. This assumption is not, in our opinion, sustained by the facts presented by the record.

In conclusion, they pray that the authorities of the town be enjoined and restrained from enforcing the ordinance so far as it affects injuriously their business as keepers of a wharf and of a wharfboat stationed at and fastened to their landing.

Upon final hearing the chancellor dismissed their peti-

tion, and to reverse his judgment they have appealed to this court.

The questions to be first settled are whether, conceding the truth of all of appellants' material averments and the correct-. ness of all their legal inferences, this is a proper case for the interference of a court of equity, and whether the writ of injunction is the proper remedy to be interposed at this time for the protection of their alleged rights.

Equity frequently interferes to prevent municipal authorities from making illegal use of their powers, and sometimes to restrain them from the attempted enforcement of unauthorized municipal regulations or ordinances. But as the settlement of the questions arising out of such regulations or ordinances usually involves the examination of purely legal principles, unmixed with equity, the jurisdiction in general attaches to the common-law courts, and it is only in exceptional cases that the chancellor will feel called upon to afford relief. (Dillon's Municipal Corporations, sec. 727.)

In the case of Ewing v. The City of St. Louis (5 Wallace, 413) the Supreme Court of the United States, upon the authority of the cases of the Mayor of Brooklyn v. Merevale (26 Wendell, 132) and Heywood v. The City of Buffalo (4 Kernan, 534), stated the doctrine thus broadly: "With the proceedings and determinations of inferior boards or tribunals of special jurisdiction courts of equity will not interfere unless it should become necessary to prevent a multiplicity of suits or irreparable injury, or unless the proceeding sought to be annulled or corrected is valid upon its face and the alleged invalidity consists in matters to be established by extrinsic evidence."

In the case of the Trustees of Louisville v. Gray (1 Littell, 147) the appellee was seeking to enjoin the municipal authorities from enforcing against him an ordinance or by-law by which penalties were imposed for the obstruction of a street,

he claiming that he was the owner of the ground upon which the wall constituting the supposed obstruction had been erected. This court then said, "Were his title admitted we should have little difficulty in entertaining jurisdiction of Gray's bill. Upon such an admission we should take jurisdiction upon the ground of its being proper to quiet him in the possession of his title. We know bills of that character have always been received by courts of equity with great caution; and in some cases it has been said that the plaintiff ought to establish his right by a determination at law in his favor before he files his bill. (2 Atkin. 484.) But such a determination at law is not necessary in all cases. It may happen that the person having title and in possession may be disturbed in the enjoyment of the possession and yet not so dispossessed or interrupted as to enable him to have his right determined in an action at law; and it has been held in such a case a bill may be brought before the right is established at law;" and it was said that under the peculiar circumstances of Gray's case it would have been proper to afford him relief if he could have made out his title.

In the case of Taylor v. City of Newport (16 B. Monroe, 779–80) the court held that Taylor's right to his ferry franchise had been originated and established by the judicial action of a tribunal having exclusive jurisdiction to grant the right, and the power of the chancellor to interfere for his protection was upheld upon the ground that the appellants were setting up an adverse claim of title in themselves, and were actually disturbing his possession. None of these exceptional reasons apply to the case under consideration.

The town of Catlettsburg had established and was the owner of a public wharf long before the wharf of appellants was constructed. The town asserts no claim to appellants' property, and does not seek to disturb their possession. It merely claims the right to regulate and control the landing of steamboats at the port of Catlettsburg. Appellants, as keepers

of the wharf, are not liable to be proceeded against under the ordinance, which they insist is void and inoperative. They do not pretend that the wharf-master has at any time refused permission to any steamboat desiring to land at their wharf. The charge is that warrants have been issued against owners and masters who have landed their boats at said wharf, as we may assume, without asking such permission, and the injury against which appellants ask to be protected is the injury arising from the fact that the owners and masters of steamboats will not apply to the wharf-master for permission to land at their wharf, and will not subject themselves to prosecutions under the ordinance, by landing without such permission.

Appellants do not make out a cause of action under the provisions of the act approved March 9, 1854, entitled "An act to quiet title to land," conceding that said act can be made to apply to a riparian right like that under consideration. Although they may have both the legal title and the possession of the wharf property, they do not make it appear that the appellee or its municipal authorities are " setting up claim thereto." The only right which the municipal authorities assert is the right, under the charter of the town, to prescribe the terms and conditions upon which steamboats transacting business at that port shall land at private wharves. Appellants insist that no such right or power is conferred upon the municipal government, either expressly or by implication. If such be the case, then the ordinance is void upon its face, and may be disregarded with impunity by any and all persons. If the ordinance was passed without legislative authority, or if the act of March 15, 1871, is constitutional and valid, so far as it purports to exempt appellants' property from the control of the corporate authorities of the town (questions which we do not decide), then, as there is no necessity for resorting to extrinsic evidence to establish these propositions, there exists no reason why a court of equity shall be called upon to deter-

mine questions that are purely legal, or to afford relief through the harsh and extraordinary remedy of injunction.

We do not consider that the case presented by appellants authorizes the interposition of the chancellor, upon the idea that the power claimed by the town casts a cloud upon their title that can not otherwise be removed. We will presently show that, as matters now stand, they have an adequate remedy at law, in case it shall turn out that they are entitled to relief at all.

The only ground upon which equity can interfere in a case like this is, that it is necessary to do so to prevent a multiplicity of suits, and if appellants had established at law their right to disregard the ordinance as an illegal and unauthorized exercise of municipal power, or to be exempted from its operations under the provisions of the private act passed for their benefit, then upon a proceeding in the nature of a bill of peace we see no insuperable reason why the chancellor might not properly assume to protect them. It is not impracticable to have the legal questions involved settled by a court of law. Appellants state in their petition that the town, by and through the direct agency of its officers, in attempting to enforce the ordinance in question has caused them a loss in wharfage and commissions of the sum of five hundred dollars. If such be the case, a petition ordinary properly framed will present all the issues of law so that they may be determined by the proper court. If the facts touching these alleged damages had been stated with a view to a recovery on account thereof, and the prayer of the petition made comprehensive enough to render it proper to have an adjudication upon this branch of the case, it would have been necessary either to transfer the action to the ordinary docket, or for the chancellor, acting as a common-law judge, to determine the questions of law involved, and, upon a determination in favor of the appellants, to have submitted the question of the amount of damages to a jury.

We conclude that, as the facts presented do not constitute a ground for relief in equity, and as the petition was not framed with a view to a recovery for damages, and as the judgment appealed from will interpose no obstacle to an action at law, the special chancellor did not err in dismissing appellants' petition.

Judgment affirmed.