Case 11—PETITION EQUITY—March 19.

# South Covington and Cincinnati Street Railway Co. v. Berry, Mayor, &c.

### APPEAL FROM CAMPBELL CHANCERY COURT.

1. INJUNCTION WILL lie to prevent a multiplicity of prosecutions by a city under a void ordinance.

2. REGULATION OF STREET RAILWAYS BY ORDINANCE—POLICE POWER.— A city ordinance requiring a street railway company to have both a conductor and a driver on each of its cars is a police regulation, and is authorized by a provision of the city charter which confers upon the Council the power to pass all ordinances "that may be necessary for the due and effectual administration of right and justice in said city, and for the better government thereof;" and " to cause the removal or abatement of any nuisance."

44 KENTUCKY REPORTS. [Vol..93

South Covington and Cincinnati Street Railway Co. v. Berry, Mayor, &c.

3. SAME—DUE PROCESS OF LAW.—It is no objection to such an ordinance that it provides that the police of the city shall cause any car without driver and conductor to be returned to the stable. Such removal of the cars from the streets is not a taking of the company's property without due process of law, as the company is not thereby divested of its property.

4. SAME.—The mere granting of a charter to operate a street railway does not deprive the city government of the power to make reasonable regulations for the enjoyment of the privilege in such a way as will be consistent with the safety of the public.

5. SAME.—A government can not divest itself of the police power.

C. B. SIMRALL FOR APPELLANT.

1. In construing the powers of a municipal corporation or city, the rule is that nothing will be held to be granted by the State unless *clearly* expressed, or unless *absolutely essential* to carry out the powers granted. (Dillon on Mun. Corp., sec. 89, 3d ed.; Henderson v. City of Covington, 14 Bush, 312; Patton v. Stephens, 14 Bush, 324; Johnston v. Louisville, 11 Bush, 533; Kniper v. City of Louisville, 7 Bush, 603.)

The city of Newport has no power to regulate the number of employes on street railway cars. (Thornhill v. City of Cincinnati, 4 Ohio Cir. Ct. Rep., 354; Ravenna v. Pennsylvania Co., 45 Ohio St., 118; Brooklyn Crosstown R. Co. v. City of Brooklyn, 37 Hun., 413; City of Toronto v. Toronto St. Ry. Co., 15 Ontario, 30; same case, 36 Am. & Eng. R. Cases, 44.)

In view of the length of time the cars have been running without having two employes, the ordinance is void as unreasonable and oppressive. (People v. Armstrong, 41 N. W. Rep., 275; Anderson v. City of Wellington, 19 Pac. Rep., 719.)

2. The ordinance in question impairs appellant's contract rights. (11 Ky. Law Rep., 321.)

3. The ordinance is void because it undertakes to deprive a person serving the public of the right to use his property before it has been judicially determined that he is in fault, or that such use is unlawful. Varden v. Mount, 78 Ky., 86.)

4. Injunction is the proper remedy. (City of Newport v. Newport & Cincinnati Bridge Co., 12 Ky. Law Rep., 39; Brown v. Trustees of Catlettsburg, 11 Bush, 435; Henderson v. City of Covington, 14 Bush, 312; Patton v. Stephens, 14 Bush, 324; Shinkle v. City of Covington, 83 Ky., 420.)

ALFRED MACK OF COUNSEL ON SAME SIDE.

CHARLES J. HELM FOR APPELLEE.

The ordinance in question is a legitimate exercise of the police power. (Charles River Bridge v. Warren Bridge, *et al.*, 11 Pet., 420; Louisville City R. Co. v. City of Louisville, 8 Bush, 421; Railroad Com-

pany v. Richmond, 96 U. S., 521; St. Louis v. St Louis R. Co., 89 Mo., 44; S. C. 58, Am. Rep., 82; McKee v. McKee, 8 B. M., 433; Commonwealth v. Steffee, 7 Bush, 162; Commonwealth v. Markham, 7 Bush, 486.)

The provision of the ordinance directing the police to return the cars to the stable is not a forfeiture of the property in any sense of the word; it is the mildest form of the exercise of police power.

Not only does a general good government clause in the charter give authority to pass ordinances of the nature of the one at bar, but the right to enforce them by forfeiture is implied. (McKee v. McKee, 8 B. M., 433; Varden v. Mount, 78 Ky., 89.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The appellant, the South Covington and Cincinnati Street Railway Company, has the charter privilege of operating a street railway upon certain streets of the city of Newport. The driver of each car also acts as conductor. The line has been operated in this way for over twenty years.

The Board of Councilmen passed this ordinance: "That all street cars running in the city of Newport shall have two persons—a driver and a conductor—on each car; and every failure to have said driver and conductor on each car shall subject the president, and each of the officers of the company controlling said car or cars, to a fine of not less than twenty-five dollars, or more than one hundred dollars, for each and every day; and the police of said city shall cause any car, without driver and conductor, to be returned to the stable."

The appellees, the Mayor and Chief of Police of the city, being about to enforce the ordinance by having the company's officers arrested and its cars returned to the stable, this action was brought enjoining it.

If the ordinance was invalid, then, to prevent a multiplicity of prosecutions and such consequences as would necessarily result from its enforcement, the company had

46 KENTUCKY REPORTS. [Vol. 93.

South Covington and Cincinnati Street Railway Co. v. Berry, Mayor, &c.

a right to ask preventive equitable relief. This is often done to prevent the illegal exercise of power by municipal authorities. (Brown, &c., v. Trustees of Catlettsburg, 11 Bush, 435; City of Newport v. Newport and Cincinnati Bridge Company, 90 Ky., 193.)

The Supreme Court of the United States said, in Ewing v. The City of St. Louis, 5 Wall., 413: "With the proceedings and determinations of inferior boards or tribunals of special jurisdiction, courts of equity will not interfere unless it should become necessary to prevent a multiplicity of suits or irreparable injury; or unless the proceeding sought to be annulled or corrected is valid upon its face, and the alleged invalidity consists in matters to be established by extrinsic evidence."

Several questions are presented as to the ordinance.

*First*—Had the city the power to enact it?

*Second*—Was it an exercise of police power?

*Third*—Does it impair the company's contract rights?

*Fourth*—Can it be enforced by a return of cars to the stable?

The city charter provides: "They (Board of Councilmen) shall have power to pass all ordinances and by-laws, not in conflict with this charter or the Constitution of this State, that may be necessary for the due and effectual administration of right and justice in said city, and for the better government thereof. They may affix such penalties for violation of ordinances, not to exceed one hundred dollars, or imprisonment in the workhouse or jail not exceeding six months, or both, in the discretion of the court, for each offense, as they may deem the good order and welfare of the city may require."

It also provides: "They shall have power to cause the removal or abatement of any nuisance * * * ."

The powers of a municipality are confined to those expressly granted, or those essential to the execution of those so granted. They are mere agencies of the sovereign authority of the State, and can, therefore, exercise no powers except those expressly conferred or those essential to the accomplishment of the purposes of the incorporation. They must be either expressly granted or necesarily implied as incident to those so granted, or essential to the object and purposes of the corporation.

Clearly, no power is attempted to be expressly given in the charter to regulate the number of employes on the street railway cars, or how they shall be operated; but if the requiring of both a driver and a conductor be the exercise of the police power, then the provision of the charter above cited authorized the enactment of this ordinance. If it be not a police regulation, but a mere attempt to enter into and regulate the company's business, then it can not be sustained.

These cars run between the cities of Newport, Covington and Cincinnati. The name of the corporation indicates the line. They pass through crowded thoroughfares and centers of crowded population. Persons are constantly getting on and off the cars. They are, in great part, women and children. The cars are apt to be crowded, at least in the morning and evening, as persons go and return from their business. If it is said they have heretofore been operated without both a driver and conductor, it can also be said the cities have grown, and the travel has, doubtless, increased.

While the privilege has been granted to the company

to operate a street railway, yet this does not deprive the city government of. the power to make reasonable regulations for its enjoyment in such a way as will be consistent with the safety of the public. No contract right of the company enters into the question. There has been no attempt to contract away this power; the mere granting of a charter to operate the railway did not constitute any such attempt; and if it had been attempted, it would be unavailing, because government can not divest itself of the police power; and the passage of this ordinance, looking as it does to the safety of the public, was a proper exercise of it and not unreasonable or oppressive in character.

The cases of Brooklyn Crosstown R. Company v. City of Brooklyn, 37 Hun., 413, where a city ordinance required both a driver and conductor upon each car ; and Ravenna v. Penn. Company, 45 Ohio St. Reports, 118, where the ordinance required a railroad company to keep a watchman at a street crossing to give warning to passers-by of approaching trains, denied the power of the municipalities to enact the ordinances, because the State Legislature had reserved to itself the power to regulate these matters. And, in Darst, &c., v. The People, 51 Ill., 286, where an ordinance declared all liquor kept within the town for the purpose of being sold or given away, and drunk within the town, a nuisance, and directed the police to remove.it beyond the town limits, it was held they could not seize and carry it away, save through a judicial instrumentality, as the owner had a right to have it determined whether it was kept for sale or gift to be drunk in the town, as in that event only was it declared to be a nuisance. Obviously, these cases are not like this one.

It is said, however, that no power existed to direct the return of a car, not having both a driver and conductor, to the stable; that this is an enforcement of the ordinance without a trial, and the infliction of punishment before the party has been found guilty by judicial process. It is in no sense, however, a forfeiture of the property, but merely authorizes an effective exercise of the police power. If, for instance, a car were found without both a driver and a conductor, is it to be merely stopped and remain upon the street, blockading travel and constituting a nuisance? Suppose a municipality, in the exercise of the police power, were to forbid the driving of elephants or other wild animals through its streets, and some were found upon them, would it not have the power to direct their removal? It is upon this idea that the impounding of stock, running at large in a town or city, may be authorized by ordinance. (McKee v. Mc-Kee, 8 B. M., 433.)

While they may be removed from the streets, where they by reason of the ordinance are a nuisance, yet, it is true, they can not be sold and the owner divested of his property without judicial proceeding. This would deprive him of his property without due process of law. (Varden v. Mount, 78 Ky., 86.)

The ordinance in question, however, does not attempt this, but merely protects the public from the danger existing from running the cars without proper control and sufficient force; and, if it be attempted, provides for their removal to prevent their becoming a nuisance.

In the case of the Railroad Company v. Richmond, 96 U. S., 521, where an ordinance provided that no car or engine of a certain railroad should be propelled by

steam upon that part of its track upon a portion of a certain street in the city of Richmond, it was held that the ordinance did not impair any vested right of the company, nor deprive it of its property without due process of law. It was a mere regulation of the use of it within the city, and not a "taking," within the meaning of the constitutional prohibition.

This is the effect of the ordinance now in question, and the judgment dissolving the injunction against its enforcement is affirmed.