CAMDEN INTERSTATE RY. CO. v. CITY OF CATLETTSBURG et al.

(Circuit Court, E. D. Kentucky. April 4, 1904.)

1. JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE.

A municipal corporation is not an agency of the state in such sense that a suit against it is one against the state within the meaning of the eleventh constitutional amendment, excluding such suits from federal jurisdiction.

2. SAME—ENJOINING PROCEEDINGS IN STATE COURT.

Under Rev. St. U. S. § 720 [U. S. Comp. St. 1901, p. 581], prohibiting federal courts from granting an injunction to stay proceedings in a state

¶ 1. Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.

¶ 2. Federal courts enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575.

court, a federal court is without jurisdiction to enjoin the further prose-cution of criminal proceedings instituted by a city for the violation of an ordinance, although such section does not deprive it of jurisdiction to enjoin threatened proceedings, which have not yet been commenced.

**3.** EQUITY JURISDICTION—ENJOINING CRIMINAL PROCEEDINGS.

A court of equity has no power to enjoin the institution or prosecu-tion of criminal proceedings, unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue therein, or to prohibit the invasion of rights of property by the enforce-ment of an unconstitutional law.

**4.** SAME.

The grant to a railroad company of the right to construct its road on the streets of a city does not vest it with property rights which render unconstitutional a subsequent law or ordinance enacted in the exercise of the police power of the state to secure the safety of the public by re-quiring the company to maintain flagmen at street crossings, and the prosecution of criminal proceedings for the enforcement of such a law or ordinance cannot be enjoined by a court of equity.

In Equity. On motion for preliminary injunction and on demur-rer to bill.

Brown & Vinson, Thos. R. Brown, and Z. T. Vinson, for plaintiff.
P. K. Malin and H. C. Sullivan, for defendant.

COCHRAN, District Judge. The complainant is a West Virginia corporation owning and operating an electric railroad between Hunt-ington, W. Va., and Ironton, Ohio, which passes in its course through the city of Catlettsburg, a municipal corporation of the fourth class in the state of Kentucky. The defendants are said city and the mayor and the chief of police thereof. The object of the suit is to enjoin the prosecution of proceedings already instituted and threat-ened to be instituted against complainant in the police court of said city for violation of an ordinance thereof which requires it to keep flagmen at a certain point on Center street, and at the intersection thereof and Division street, and at the intersection of Division and Louisa streets, or, in lieu of flagmen at said intersections, to have the conductor of each car flag it around the curves thereat. The ordinance provides that each day's failure to comply therewith shall be deemed a separate offense, and fixes a fine of $10 for each offense. The complainant moves for a preliminary injunction, and defendants demur to the bill. Each step raises the same questions.

It is urged by the defendants that this court has no jurisdiction of this suit because of the eleventh amendment to the federal Con-stitution. That amendment is in these words:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."

They cite authorities to the effect that a municipal corporation is an agent of the state government for local purposes, and contend, there-fore, that a suit against such corporation and its officers is a suit

¶ 3. Restraining criminal prosecutions, see note to Arbuckle v. Blackburn, 51 C. C. A. 133.
See Injunction, vol. 27, Cent. Dig. §§ 178, 179.

against "one of the United States," within the meaning of that amendment. That such a corporation is such an agent is undoubtedly true, but it does not follow therefrom that a suit against it or its officers is such a suit. The most that can be said is that it is a suit against a subdivision of one of said states, not that it is a suit against one of said states itself. This being so, the amendment in question does not deny jurisdiction to the federal courts of the suit, for it denies to them jurisdiction only of suits against "one of the United States," and not against a subdivision thereof. If the federal courts do not, by reason of said amendment, have jurisdiction of suits against municipal corporations, it is hard to understand upon what ground it has been that they have so often taken jurisdiction of suits against them. So far as my research has gone, I have not found a case where it has been urged that federal courts do not have such jurisdiction, much less where it has been so held. The cases cited by counsel for defendants in support of the proposition that municipal corporations are state agencies for local purposes were mostly suits against municipal corporations, and in none of them was it suggested that the suits could not be maintained for want of jurisdiction; on the contrary, in each of them jurisdiction to dispose of them on their merits was exercised. I think it therefore clear that the jurisdiction of this court of this cause is not affected by this consideration.

But this is not the only ground upon which it can be claimed that this court has no jurisdiction, though it is the only one that has been urged. It is certain that it has no jurisdiction to enjoin the further prosecution of the proceedings already instituted and now pending. This is because of section 720, Rev. St. U. S. [U. S. Comp. St. 1901, p. 581], which is in these words:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

It is well settled that such proceedings as are now pending are proceedings in a court of the state of Kentucky within the meaning of said statutory provision. In the case of Yick Wo v. Crowley (C. C.) 26 Fed. 207, it was held that said section forbade the issuance of an injunction to prevent a police officer of a city from serving warrants of arrest issued by a state court for violation of city ordinances claimed to be in contravention of the fourteenth amendment of the United States Constitution and the treaty with China. Said statutory provision, however, has no relation to such proceedings as are not now pending, but are only threatened. In the case of Rhodes & Jacobs Mfg. Co. v. New Hampshire (C. C.) 70 Fed. 721, Judge Putnam said:

"We are asked to enjoin one of the defendants from proceeding in his official capacity as a justice of a state police court, admittedly a judicial function; and all the other defendants are sought to be restrained in the exercise of their official duties solely and purely with reference to the incidents of proceedings in the justice's court. It is plain that under section 720 of the Revised Statutes the proceedings instituted before this bill was filed and described in it cannot be enjoined by this court. It seems, however, to be

for the most part considered that this section does not apply to proceedings, either criminal or civil, which have not in fact commenced, but which are threatened by state officials. Mr. Justice Bradley, in Live Stock Dealers & Butchers' Ass'n v. Crescent City Live Stock Landing & Slaughter-House Co., 1 Abb. (U. S.) 388, 404, 407, Fed. Cas. No. 8,408, and Mr. Justice Blatchford in Fisk v. R. R. Co., 10 Blatchf. 518, Fed. Cas. No. 4,830. A like distinction seems also to have been made by Judge Sawyer in Yick Wo v. Crowley [C. C.] 26 Fed. 207. Therefore if we had only this statutory provision to consider, we might find no difficulty in going to an injunction against criminal proceedings threatened, but not commenced, when the bill was filed."

But though it cannot be said that this court has no jurisdiction to enjoin the institution of threatened proceedings under said ordinance because of said statutory provision, there is ground upon which it may be urged that it has not such jurisdiction. That ground is that proceedings under said ordinance are criminal proceedings, and a court of equity has no jurisdiction to enjoin the institution or prosecution of such proceedings. There can be no doubt but that such is the nature of such proceedings; and it is equally true that, as a general rule, a court of equity is without jurisdiction to enjoin their institution or prosecution. But to this rule there are two exceptions, and the question arises whether this case comes within either one of them. To determine this question correctly it is essential to understand exactly just what those two exceptions are. And here we will limit our attention to decisions of the Supreme Court of the United States relevant to the matter. The leading case on the subject, though what is said in the opinion therein in relation to the jurisdiction of a court of equity to enjoin criminal proceedings is open to the suggestion that it was obiter, is the case of In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402. That was a petition by the mayor and councilmen of Lincoln, Neb., for a writ of habeas corpus to release them from imprisonment for contempt of court in disobeying an order of the United States Circuit Court for that state enjoining them from prosecuting proceedings already instituted and then pending to remove the police judge of said city from his office for malfeasance therein. The contempt depended upon the question whether the Circuit Court had jurisdiction to make the order disobeyed. It was held that it did not have such jurisdiction, and the petition was therefore granted. The ground upon which it was held that said court was wanting in such jurisdiction was that a court of equity has no jurisdiction to enjoin proceedings to remove a public officer from his office, and this without regard to the nature of the proceedings. Mr. Justice Gray, who delivered the opinion of the court, suggested that there were several possible views as to their nature, without deciding which was the true one. They might be regarded as criminal or civil, and, if the latter, they might be regarded as judicial or administrative. If regarded as civil judicial proceedings, he held that there was in this an additional reason for holding that the lower court was without jurisdiction to enjoin their prosecution, because of section 720, Rev. St. U. S., heretofore referred to, which prohibits a court of the United States granting a writ of injunction to restrain proceedings in a state court. This reason equally applied if the proceedings were re-

garded as criminal, and therefore judicial, in their character, though no suggestion was made as to this. If, however, the proceedings were regarded as criminal, he held that there was in this consideration a reason also for the lower court being without jurisdiction to make the order which had been disobeyed. And in this connection he stated the law in regard to the right of a court of equity to enjoin criminal proceedings. Seemingly, at least, he recognized but one exception to the general rule on the subject. In the course of his consideration of the subject he said:

"The modern decisions in England by eminent equity judges concur in holding that a court of chancery has no power to restrain criminal proceedings unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there."

Mr. Justice Field, who delivered a concurring opinion, had this to say on the subject:

"I concur also in what is said in the opinion of the court as to the want of jurisdiction of a court of equity over criminal proceedings, but do not perceive its application to the present case. The proceedings before the common council were not criminal in the sense to which the principle applies. That body was not a court of justice administering criminal law, and it is only to criminal proceedings in such a tribunal that the authorities cited have reference. In many cases proceedings, criminal in their character, taken by individuals or organized bodies of men, tending, if carried out, to despoil one of his property or other rights, may be enjoined by a court of equity."

I do not understand the last sentence of this quotation to state an additional exception to the rule in question, but to limit it to proceedings in a court of justice criminal in their character.

The case of Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, was a suit by the Farmers' Loan & Trust Company, mortgagee of the International & Great Northern Railroad Company, against the Railroad Commission and Attorney General of the state of Texas and said railroad company to cancel and have declared null and void certain rates and tariffs for the transportation of goods by said company which had been fixed by said commission, because unreasonable and unjust, and to restrain said company from putting them into effect, and said commission and Attorney General from instituting proceedings against said company and its officers and agents to enforce payment of penalties prescribed by the law under which said commission acted in fixing said rates for extortion in charging rates in excess thereof and said commission from fixing other rates. It was adjudged that the plaintiff was entitled to all the relief prayed for save in so far as the commission was sought to be enjoined from fixing other rates. The only ground urged as a reason why there was no jurisdiction to grant said relief considered and passed upon by the court was that the suit, in so far as it was against the Railroad Commission and the Attorney General was a suit against the state of Texas, and hence prohibited by the eleventh amendment. It was held that this ground was not well taken, because the suit was not a suit against said state within the meaning of said amendment, and, whether so or not, the sixth section of said law authorized any railroad company or party in interest dissatisfied with the rates fixed by the

Railroad Commission to bring suit against it to raise and have determined the question as to their reasonableness. Nothing was said in the opinion as to whether the proceedings authorized to be instituted to enforce said penalties were criminal proceedings, and, if so, whether the right to enjoin the Railroad Commission and Attorney General from instituting them was affected by this fact, or adjusting the holding that their institution should be enjoined with the general rule in regard to the right to enjoin the institution or prosecution of criminal proceedings as laid down in the Sawyer Case. And it is to be noted that, in addition to liability to such proceedings for charging excess rate, there was also liability to civil suit for damage and penalties at the hand of shippers provided by said law.

The case of Smyth v. Ames, 169 U. S. 542, 18 Sup. Ct. 418, 42 L. Ed. 819, which involved a law of Nebraska, was similar to the Reagan Case save in that the suit was brought by certain stockholders of the railroad company affected by the rates in question, and those rates were fixed by said law, and not by the Railroad Commission. The railroad company was enjoined from making a schedule of rates in accordance with said law, and the Railroad Commission, or "Board of Transportation," as it was called, was enjoined from instituting or prosecuting any proceedings for violation of said law. Here, too, nothing was said in the way of adjusting the position taken that the plaintiffs were entitled to the relief granted with the holding in the Sawyer Case as to the right of a court of equity to enjoin the institution or prosecution of criminal proceedings.

The case of Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399, was an appeal from an order of the Circuit Court of the United States for the Western District of Virginia discharging a prisoner from state custody on a writ of habeas corpus. The prisoner was in custody under proceedings against him on an indictment for embezzlement of the assets of a bank. The ground upon which the lower court acted in discharging the prisoner was that prior to the finding of the indictment two suits in equity had been brought in said court by the creditors of said bank, in which a receiver to take charge of the bank and a master to take all necessary accounts had been appointed, and after the finding thereof the commonwealth attorney and other persons engaged in prosecuting it had been enjoined by it from further prosecution thereof. It considered that pending those suits the state court had no jurisdiction to proceed by way of indictment and trial against the prisoner for embezzling the assets of said bank, and for it to so proceed constituted an interference with the federal court in the exercise of its jurisdiction. The Supreme Court reversed the order appealed from. It held that the lower court had no right to enjoin the prosecution of said indictment for three reasons: It was prohibited by section 720, Rev. St. U. S., it was an injunction against the prosecution of criminal proceedings, and it was a suit against the state of Virginia within the meaning of the eleventh amendment. In considering the second reason, the only exception to the general rule that a court of equity has no power to enjoin criminal proceedings referred to was

the one suggested by Mr. Justice Gray, and it was held that the case did not come within that exception.

The case of Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535, was a suit brought by the receivers of a railroad company against the Attorney General of the state of Alabama to restrain him from instituting or prosecuting criminal proceedings to enforce against the plaintiffs provisions of a state law reducing the tolls which had been exacted of the public by said company for travel over a bridge owned by it on the ground that said legislative enactment was arbitrary, unreasonable, and amounted to a confiscation of said company's property. It was held that the suit could not be maintained. The denial of the relief sought was placed upon two grounds. One was that it was a suit against the state of Alabama, within the meaning of the eleventh amendment. The other was that it was a suit to enjoin the institution and prosecution of criminal proceedings, which a court of equity had no jurisdiction to do. The law reducing the tolls provided a fine for each offense of demanding or receiving a higher rate of toll than that prescribed of $20 to be recoverable before any justice of the peace of the two counties in which the bridge was located. The holding that the plaintiff was not entitled to the relief sought on the latter of said two grounds was based upon the Sawyer Case and that of Harkrader v. Wadley. No reference was made to the two cases of Reagan v. Farmers' Loan & Trust Co. and Smyth v. Ames as bearing upon this point, or attempt made to adjust them to said holding, though they were referred to and distinguished in their bearing upon the question as to whether the suit was one against the state of Alabama. Mr. Justice Harlan, in delivering the opinion of the court, said:

"We are of the opinion that the Circuit Court of the United States sitting in equity was without jurisdiction to enjoin the institution or prosecution of these criminal proceedings commenced in the state court."

And again:

"The plaintiffs state that the toll gatherers in their service had been indicted in a state court for violating the provisions of the act of 1895 in respect of tolls. Let them appear to the indictment, and defend themselves upon the ground that the state statute is repugnant to the Constitution of the United States. The state court is competent to determine the question thus raised, and is under duty to enforce the mandates of the supreme law of the land. * * * And if the question is determined adversely to the defendants in the highest court of the state in which the decision could be had, the judgment may be re-examined by this court upon writ of error. That the defendants may be frequently indicted constitutes no reason why a federal court of equity should assume to interfere with the ordinary course of criminal procedure in a state court."

The last case in which the Supreme Court has had occasion to consider the jurisdiction of a court of equity to enjoin criminal proceedings is the recent one of Davis & Farnum Mfg. Co. v. City of Los Angeles (decided March 2, 1903, and not yet officially reported) 23 Sup. Ct. 498, 47 L. Ed. 778. That case was this: Caroline W. Dobbins made a contract with the Valley Gas & Fuel Company, a California corporation, to build certain gasworks for her, including all things necessary for the manufacture, recovery, and storage of

gas on lands thereafter to be designated. Thereafter said company made a contract with the Davis & Farnum Manufacturing Company, a Massachusetts corporation, to erect on Mrs. Dobbins' premises a water tank and gas holder, one of the things included in said company's contract with her. And thereafter Mrs. Dobbins purchased certain lands in Los Angeles upon which the gasworks were to be built, and which were within the limits wherein it was lawful to erect gasworks according to the then existing ordinances of said city, obtained permission of the board of fire commissioners to erect the gasworks thereon as therein prescribed, and her contractors began to lay the foundation thereof at a cost of upwards of $2,500. Subsequent to this the city amended said ordinances, and included Mrs. Dobbins' property in the prohibited territory for the erection or maintenance of gasworks. It would seem that said ordinances provided criminal proceedings to secure their enforcement, and, the work being continued after the adoption of said amendment, proceedings were instituted against the employés of the gas and fuel company and the manufacturing company upon which they were arrested and the work stopped. Thereupon a bill in equity was filed by said manufacturing company alone against the city to restrain it and its officers from enforcing said ordinances. It was averred that the gasworks were in an uncompleted condition, exposed to the elements, and in danger of being destroyed; that said amending ordinances were adopted at the instigation of a light company that had enjoyed a monopoly of the gas business in said city for 10 years past; that they were unconstitutional, as impairing the obligation of Mrs. Dobbins' contract with the city under the prior ordinances. It was held that the suit could not be maintained. The lower court, by Judge Wellborn, whose opinion may be found in 115 Fed. 537, had likewise so held. He placed his decision solely upon the ground that it was a suit to enjoin the prosecution of criminal proceedings. In his opinion he recognized but one exception to the general rule that a court of equity has no jurisdiction to enjoin such proceedings; that exception being the one stated by Mr. Justice Gray in the Sawyer Case, to wit, where they were instituted by a party to a suit already pending before it, and to try the same right that is in issue there. The Supreme Court considered the case under the same aspect. Mr. Justice Brown said:

"As the only method employed for the enforcement of these ordinances was by criminal proceedings, it follows that the prayer of the bill to enjoin the city from enforcing these ordinances or prevent plaintiff from carrying out its work must be construed as demanding the discontinuance of such criminal proceedings as were already pending and the institution of others of a similar character."

In stating the rule on the subject, Mr. Justice Brown referred to another exception thereto, and seemed to hold that it was implicitly, if not expressly, stated in the Sawyer Case, though there is room for the inference that it was admitted under the influence of the cases of Reagan v. Farmers' Loan & Trust Co. and Smyth v. Ames, and that it was considered that it was not affected by the case of Fitts v. McGhee. That exception was that, where the

criminal proceedings were in the enforcement of a law which was unconstitutional because it invaded rights of property, their threatened institution or prosecution might be enjoined at the instance of the party whose rights of property would thereby be invaded. Mr. Justice Brown said:

"That a court of equity has no general power to enjoin or stay criminal proceedings unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there, or to prohibit the invasion of the rights of property by the enforcement of an unconstitutional law, was so fully considered and settled in an elaborate opinion by Mr. Justice Gray (In re Sawyer, 124 U. S. 200 [8 Sup. Ct. 482, 31 L. Ed. 402]) that no further reference to prior authorities is deemed necessary, and we have little more to do than to consider whether there is anything exceptional in the case under consideration to take it out of the general rule."

He stated that the general rule had been applied in Harkrader v. Wadley and Fitts v. McGhee, and as to the latter case he said:

"This was held to be in reality a suit against the state to enjoin the institution of criminal proceedings, and hence within the general rule."

Concerning its application to the case in hand he said:

"Plaintiff seeks to maintain its bill under the exception above noted, wherein, in a few cases, an injunction has been allowed to issue to restrain an invasion of rights of property by the enforcement of an unconstitutional law, where such enforcement would result in irreparable damages to the plaintiff."

Concerning the Reagan Case, which had been cited by plaintiff in support of the admission of such exception, he said that therein, "under a law of Texas giving express authority to a railroad company or other party in interest to bring suit against the Railroad Commission of that state, a bill was sustained against such commission to restrain the enforcement of unreasonable and unjust rates, and in the opinion a few instances were cited where bills were sustained against officers of the state who, under color of an unconstitutional statute, were committing acts of wrong and injury to the rights and property of the plaintiff acquired under a contract with the state." And in justification of the admission of such exception he said:

"It would seem that if there were jurisdiction in a court of equity to enjoin the invasion of property rights through the instrumentality of unconstitutional law, that jurisdiction would be ousted by the fact the state has chosen to assert its power to enforce such law by indictment or other criminal proceedings. Springhead Spinning Co. v. Riley, L. R. 6 Eq. 558."

The ground upon which it was held that the case in hand did not come within the exception, and therefore the plaintiff was not entitled to the relief sought, was that it had no legal interest in the litigation, and there was no lack of complete and adequate remedy at law. It had no contract with the city which had been violated by the ordinances complained of. The contract relied on was a contract with Mrs. Dobbins, to which it was no party, and in which it had no direct interest. And the case was distinguishable, for reasons given, from those in which bills had been sustained by one or more stockholders in a corporation against the corporation, and other parties to restrain the enforcement of an unconstitutional law

against the corporation itself, and also from the Reagan Case, in which it was held that the trustee of bondholders of a railroad corporation could maintain a suit against the State Railway Commission to restrain the enforcement of unreasonable and unjust rates. Besides, it did not appear that the manufacturing company did not have a complete and adequate remedy against its contractor, the gas and fuel company, for all damages which it had sustained by the stoppage of the work. This being so, irrespective of the fact that the case did not come within the exception relied on, and hence was affected by the general rule in relation to enjoining criminal proceedings, plaintiff was not entitled to the relief sought.

The line of cases which we have been considering in extenso must be differentiated from those cases which relate to the question whether a court of equity can enjoin criminal acts. In the former the question is whether it has jurisdiction to enjoin proceedings to punish criminal acts, whereas in the latter it is whether it can enjoin these acts themselves. It is held that criminal acts which amount to an invasion of right of property may be enjoined by a court of equity, notwithstanding they may be punishable criminally. This was one of the questions considered and determined in the case of In re Debs, 158 U. S. 596, 15 Sup. Ct. 909, 39 L. Ed. 1092. Mr. Justice Brewer there said:

"Again, it is objected that it is outside of the jurisdiction of a court of equity to enjoin the commission of crimes. This, as a general proposition, is unquestioned. A chancellor has no criminal jurisdiction. Something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive power of the court. There must be some interference, actual or threatened, with property or rights of a pecuniary nature; but when such interferences appear the jurisdiction of a court of equity arises, and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal laws."

Likewise that line of cases must be distinguished from those which uphold the right of a court of equity to enjoin proceedings to enforce payment of penalties prescribed for nonpayment of taxes or license fees that are illegal on the ground that thereby multiplicity of suits is prevented. Such proceedings are civil in their nature. In the case of Royall v. Virginia, 116 U. S. 572, 6 Sup. Ct. 510, 29 L. Ed. 735, Mr. Justice Matthews said:

"As the sum demanded for the license is a tax, the provision for the punishment of one who pursues his profession without a license is a part of the revenue system of the state, and is a means merely of enforcing payment of the tax itself, or of a penalty for not paying it. It is legally equivalent to a civil action of debt upon the statute, and its substantial character is not changed by calling the default a misdemeanor, and providing for its prosecution by information. The present case therefore stands precisely, so far as the constitutional questions arising in it are affected, as if it were a civil action in which the commonwealth of Virginia was plaintiff, seeking to recover the amount due on account of the tax and penalty."

In the recent case of Southern Express Co. v. Ensley (C. C.) 116 Fed. 756, Judge Jones said:

"A license imposed for revenue is the exercise of the taxing, not the police, power, and prosecutions before the corporate tribunal for doing the business without a license are quasi penal at most. In substance and legal effect they

are civil proceedings. * * * The 'offense' is not a crime. The 'offense' does not violate any law for the preservation of the health, morals, liberty, or peace of the citizens of Ensley. Enjoining prosecutions of the 'offense' here, if there is any law to support it, does not in any wise interfere with the control of the local tribunals over the mass of governmental powers committed to them for the welfare of the people of Ensley under what, for want of a better name, we denominate the police power. It is about ordinances directed solely to that end that many of the authorities are strict in holding that courts of equity must not interfere."

In view of this line of decisions it is not necessary to consider authorities in other jurisdictions bearing upon the question as to when criminal proceedings may and when they may not be enjoined by a court of equity. Perhaps more definiteness is desirable as to what constitutes an invasion of rights of property by the enforcement through criminal proceedings of an unconstitutional law so as to bring it within said exception, and perhaps, also, the decision in the case of Davis & Farnum Manufacturing Company v. City of Los Angeles requires that the case of Fitts v. McGhee should be limited to a holding that plaintiff therein was not entitled to the relief sought upon the ground that it was a suit against the state of Alabama within the meaning of the eleventh amendment. But sufficient can be gathered from them to determine whether or not this court has jurisdiction to enjoin the institution of further proceedings under the ordinances complained of herein.

It is certain that this case does not come within the first exception to the general rule against a court of equity enjoining criminal proceedings. The criminal proceedings complained of herein were not instituted by a party to a suit already pending before this court, and to try the same thing that is in issue there. Does it, then, come within the other exception? Have those proceedings been provided to enforce a law which is unconstitutional because it invades the property rights of complainant? There is no doubt but that the ordinance in enforcement of which those proceedings are provided affected the property of complainant. It imposes a burden of maintaining a flagman at least at one point, and at two other points if it does not see fit to cause the conductor of each car to flag it thereat, and, if it does, it imposes the burden of the delay in the operation of its cars thereby caused. But in so doing does it invade the property rights of complainant, and is it therefore unconstitutional? This depends upon the further question as to whether the Legislature of Kentucky had the power to authorize the city of Catlettsburg to enact such an ordinance. It it did, then said ordinance and the act of said Legislature empowering its enactment, if there is such an act, are not unconstitutional. The complainant, if such is the case, holds its property subject to the rights of said Legislature to impose such a burden upon it, and the imposition thereof cannot, therefore, be an invasion of its property rights. It is averred in the bill that the complainant at and before the passage of said ordinance had the right to operate a line of electric railroad over the streets of the defendant city under a grant so to do upon certain terms and considerations, none of which are set forth, made by it to the Ashland & Catlettsburg Street Railway Company, which grant was subsequently assigned and transferred to complainant by

said company, and it is claimed that by reason of such grant without the reservation of power to impose the burden complained of no such burden could subsequently be imposed upon complainant by authority of the Legislature. But such result does not follow from the fact of such grant without such reservation. Notwithstanding it, by virtue of the police power, the Legislature had the right to impose or authorize the imposition by the defendant of such burden upon the complainant. This is well settled. In the case of N. Y. & N. E. R. R. Co. v. Bristol, 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269, where the action of the Railroad Commissioners of Connecticut in pursuance to a law of that state requiring the removal by a railroad company of a grade crossing at a highway in the town of Bristol was upheld. Mr. Chief Justice Fuller said:

"It is likewise thoroughly established in this court that the inhibition of the Constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process, or of the equal protection of the laws, by the states, are not violated by the legitimate exercise of legislative power in securing the public safety, health, and morals. The governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury."

In the case of Chicago, B. & Q. R. Co. v. Chicago, 166 U. S. 254, 17 Sup. Ct. 590, 41 L. Ed. 979, where the right of the city of Chicago to open a new street across a railroad without compensating the company for the additional expense imposed upon it by reason thereof was in question, Mr. Justice Harlan said:

"The plaintiff in error took its charter subject to the power of the state to provide for the safety of the public in so far as the safety of the lives and persons of the people were involved in the operation of the railroad. The company laid the tracks subject to the condition necessarily implied that their use could be so regulated by competent authority as to insure the public safety. And as all property, whether owned by private persons or by corporations, is held subject to the authority of the state to regulate its use in such manner as not to unnecessarily endanger the lives and the personal safety of the people, it is not a condition of the exercise of that authority that the state shall indemnify the owners of property for the damage or injury resulting from its exercise. Property thus damaged or injured is not, within the meaning of the Constitution, taken for public use, nor is the owner deprived of it without due process of law. The requirement that compensation be made for private property taken for public use imposes no restriction upon the inherent power of the state by reasonable regulations to protect the lives and secure the safety of the people."

But, though the position is taken in the bill that the burden complained of could not constitutionally be imposed upon complainant, it has not been seriously urged in the argument of the case. According to that the real contention of complainant is that the Legislature has not undertaken to impose this burden on it by authorizing the defendant city to enact the ordinance by which it has been attempted to be imposed upon it. In other words, its real position is that the defendant city did not have legislative authority to enact the ordinance complained of. It is certain that it must have had such authority in order for the ordinance to be valid. As said by

Mr. Justice Brown in the case of Barnett v. Denison, 145 U. S. 135, 12 Sup. Ct. 819, 36 L. Ed. 652:

"It is the settled doctrine of this court that municipal corporations are merely agents of the state government for local purposes, and possess only such powers as are expressly given, or implied because essential to carry into effect such as are expressly granted."

It is certain, further, that the only powers conferred upon the defendant city which can be construed as giving it authority to pass the obnoxious ordinance are general powers "to pass ordinances not in conflict with the Constitution and the laws of the state or of the United States"; "to prevent and remove nuisances at the cost of the owner or occupants or of the party upon whose ground they exist, and define and declare by ordinance what shall be a nuisance within the limits of the city, and to punish by fine any person for causing or permitting a nuisance"; "to make by-laws and ordinances for the carrying into effect of all the powers herein granted for the government of the city, and do all things properly belonging to the police of incorporated cities"; and to have "the exclusive management and control" of all "public streets, alleys, sidewalks, roads, lanes, avenues, highways, and thoroughfares," "with powers to improve them by original construction, or to reconstruct them as may be prescribed by ordinances"; and specific power to "grant the right of way over the public streets or public grounds of the city to any railroad company or street railroad company on such conditions as to them may seem proper"; to "have a supervising control over the use of the same"; to "regulate the speed of cars and signals and fare on street cars"; to "grant the right of way that may be necessary to gas companies, water companies, electric light companies, telephone companies, or any like companies"; and to "compel railroad companies to erect and maintain gates at any or all street crossings." See Ky. St. 1903, § 3490, subsecs. 1, 7, 25, 33; section 3560. The complainant contends that this is not sufficient to confer power on the defendant city to pass said ordinance, and cites particularly in support of its contention the case of Pittsburgh, C., C. & St. L. R. Co. v. Crown Point (Ind.) 45 N. E. 587, 35 L. R. A. 685, where it was held that a grant to municipal corporations of power to regulate travel upon the streets so as to make their use reasonably safe and to enact ordinances for the protection of health, life, and property was not sufficient to authorize it to pass an ordinance to compel a railroad company at its own expense to keep a watchman and maintain gates where the tracks cross a street, under penalty for failure so to do. On the other hand, defendants cite in support of their contention that such power is ample to warrant the passage of the ordinance, the case of South Cov. & Cin. S. R. Co. v. Berry, 93 Ky. 43, 18 S. W. 1026, 15 L. R. A. 604, 40 Am. St. Rep. 161, where it was held that an ordinance of the city of Newport, Ky., requiring a street railway company to have both a conductor and driver on each of its cars, was authorized by a provision of the charter of the city which conferred upon the council power to pass all ordinances "that may be necessary for the due and effectual administration of right and justice in said city and for the better government thereof,"

and "to cause the removal or abatement of nuisance." In the view which we take of the case we do not find it necessary to pass upon this question thus at issue between the parties hereto, and the reasons put forward in support of their several contentions. It is plain that this is not a case where the rights of property of complainant are invaded or attempted to be invaded by an unconstitutional law sought to be enforced by criminal proceedings, and that, therefore, it does not come within the second exception to the general rule that a court of equity is without jurisdiction to enjoin the prosecution of criminal proceedings put forth by Mr. Justice Brown in the Davis & Farnum Manufacturing Company Case, but is subject to the general rule, and this court is without jurisdiction to grant the relief sought in this case.

Some point is made by complainant that on account of the low fine prescribed by the ordinance for each offense, to wit, $10, it is without remedy to have the serious matter presented by said ordinance disposed of by the higher state courts, and this is urged as a reason why this court should intervene. But this point is not well taken, for it is expressly provided in section 3519, Ky. St. 1903, a part of the charter of municipal corporations to which the defendant city belongs, that:

"Appeals shall be from the judgment of said police court to the circuit court of the county in all cases where the fine is more than twenty dollars. In cases where twenty dollars and less are imposed or authorized under ordinances the legality of such ordinances may be tested by either party by an appeal to the circuit court of the county. Where any judgment shall be rendered from the circuit court of the county as provided for in this section, either the city or the accused may appeal to the superior court or Court of Appeals."

Then it is urged as a reason why this court should taken jurisdiction that the complainant is liable to be subjected to innumerable prosecutions until the validity of the ordinance is finally determined by the highest court of the state. This is true, and to prevent it the complainant may have to temporarily, at least, comply with the ordinance. But as said by Mr. Justice Harlan in the case of Fitts v. McGhee:

"That the defendant may be frequently indicted constitutes no reason why a federal court of equity should assume to interfere with the ordinary course of criminal procedure in a state court."

It follows that the motion for a preliminary injunction must be denied, and the demurrer to the bill sustained.