Henry WARD, Commissioner of the Department of Highways of the Commonwealth of Kentucky, and Department of Highways of the Commonwealth of Kentucky, Appellants,

v.

LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellee.

Court of Appeals of Kentucky.

April 22, 1966.

Robert Matthews, Atty. Gen., Wm. A. Lamkin, Jr., Asst. Atty. Gen., Paul E. Hunley, Highway Dept., Glenn McDonald, Highway Dept., Frankfort, for appellants.

Marion Rider, Frankfort, for appellee.

DAVIS, Commissioner.

This appeal arises from a declaratory judgment action testing whether Department of Highways (hereafter Department) may comply with contracts it has entered into with appellee (hereafter Railroad) respecting the Department's paying the maintenance expenses incident to electric warning signals and gates at eleven grade crossings of the Railroad's tracks over the public highways of this state. The trial court entered judgment declaring the contracts legal in all respects. The Department appeals, asserting that expenditure of public funds for maintenance of such devices will be violative of Kentucky Constitution Sections 49, 50, 177 and 230. It is also asserted for the Department that payment of such expenses will be an illegal abrogation of police power, and that KRS 277.065 does not authorize the Department to make such expenditures.

For convenient reference we quote Kentucky Constitution, Section 177:

"Commonwealth not to lend its credit or become stockholder in corporation.—The credit of the Commonwealth shall not be given, pledged or loaned to any individual, company, corporation or association, municipality, or political subdivision of the State; nor shall the Commonwealth become an owner or stockholder in, nor make donation to, any company, association or corporation; nor shall the Commonwealth construct a railroad or other highway."

■ The Department first contends that the Department's participation in the outlay of funds for electric warning signals and gates at railroad crossings amounts to "construction" of a railroad, and thus runs afoul the just quoted Section 177. In support of this contention the Department calls attention to KRS 277.160 which requires that every railroad shall cause signal boards to be placed and constantly maintained at each public highway crossing (with certain exceptions not material here). The Department observes that the common law requires railroads to give reasonable and timely warning to the public of the approach of trains to public crossings, citing Louisville & N. R. Co. v. Craig, 310 Ky. 43, 219 S.W. 2d 954, and other authorities to that effect. From this, it is reasoned that such signals are required as a part of the railroad, hence outlay for construction or maintenance of them is to construct a railroad. We are not so persuaded.

To say that the law, whether statutory or common law, requires that a railroad give reasonable and timely warning of the approach of its train to a public crossing is not to say that an electric signal and a safety gate are required. Neither is it to say that the Department, charged with the responsibility for promoting highway safety, may not provide additional safeguards for the public at railroad crossings. The Department's efforts are for the protection of the public in use of the highways. The fact that fewer accidents at grade crossings may diminish the exposure of the railroads to liability suits is merely a by-product, not the objective of this activity.

■ In our view, increased traffic safety is definitely a public project for which public funds may be expended. Incidental or collateral benefits which may accrue to the Railroad do not constitute a donation or loan of credit to the Railroad by the Department within the purview of Section 177, Kentucky Constitution. The Department relies on Southern Bell Tel. & Tel. Co. v. Commonwealth, Ky., 266 S.W. 2d 308, in support of its contention that outlay of public funds for maintenance of the devices at hand will constitute a donation or loan of the state's credit within the meaning of Section 177, Kentucky Constitution.

In that case the court held that the utility was required to remove its facilities to accommodate a new highway by the very terms of its franchise. It was there said that had the franchise required the removal of the facilities at the expense of the state it would have violated Section 177. Whether that statement was *obiter dictum* may be argued, but in any event we do not regard that precedent as dispositive of the case at bar. That decision dealt with the construction of a new highway; the removal and relocation of the facilities of the telephone company was a prerequisite to the construction of the new road. There the question was not the improvement of safety conditions on an existing highway, but whether the utility installations should be permitted to preclude the construction of a new project.

 Next it is urged that the use of highway funds for maintenance of the signal devices contravenes Section 230, Kentucky Constitution. This argument is premised on the contention that the maintenance of these devices is not for highway purposes. We think the promotion of safety for members of the public who use the highways is a "highway purpose." Reason and precedent impel that view. Cf. Grauman v. Department of Highways, 286 Ky. 850, 151 S.W.2d 1061; Keck v. Manning, 313 Ky. 433, 231 S.W.2d 604.

 The Department maintains that the contracts create an obligation against future public revenues contrary to Sections 49, 50 and 230 of the Kentucky Constitution. The Department is not committed for any definite time to maintain the signal devices. Apart from this, however, the maintenance of these safety promoting signals is simply a matter of maintenance of a part of the highway system. The reasoning enunciated in Guthrie v. Curlin, Ky., 263 S.W.2d 240, 243, 244, is applicable here. In *Guthrie* this court held that the agreement of the Department of Highways to maintain a toll road was not an unconstitutional creation of a debt.

 The Department suggests that the challenged contracts effect an illegal abdication of the state's police power. Reliance is had upon South Covington and C. St. Railroad Co. v. Berry, Mayor, 93 Ky. 43, 18 S.W. 1026, 15 L.R.A. 604, and Southern Bell Tel. & Tel. Co. v. Commonwealth, Ky., 266 S.W.2d 308. It may be conceded that the cited authorities and others hold that a state may not by contract or otherwise abdicate or bargain away its police power. We are of the view that this case does not present an instance of the state's abdication of its police power. See City of Louisville v. Weible, 84 Ky. 290, 1 S.W. 605, 8 K.L.R. 361, and Bond Bros. v. Louisville & Jefferson County Met. Sewer Dist., 307 Ky. 689, 211 S.W.2d 867, in which this court recognized the principle that a governmental unit does not abdicate its police power by contracting with private persons to perform police power functions. Many reasons appear which warrant the state's utilizing the means here employed as the most efficient way in which to effectuate the police power purpose of providing signal devices at railroad crossings. For example, it may not be doubted that the questioned method is far less cumbersome to the state than would be its independent effort to furnish the same service to the public.

 Finally, the Department asserts that KRS 277.065 does not permit the state to pay the maintenance of the signal devices. It is true that the cited statute does not expressly mention signal devices, but we regard the following language in the statute as ample to embrace the signal devices:

"The cost of maintenance of all structures for the elimination of railroad grade crossings, and of installations for the protection of existing grade crossings * * * shall be borne by the governmental unit or units constructing them."

The judgment is affirmed.