290                ENTUCKY REPORTS.        [VOL. 84.

City of Lou. v. Wible & Willinger.    Wible & Willinger v. Struss & Co.

CASE 42—PETITIONS EQUITY—SEPTEMBER 30.

# City of Louisville v. Wible & Willinger.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

# Wible & Willinger v. Struss & Co.

### APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. THE POWER OF THE STATE TO PROTECT THE PUBLIC HEALTH THROUGH HER TOWNS, cities and other public agencies, can not be relinquished or surrendered, yet the State, or its municipalities intrusted with the execution of this power, may make such contracts as will attain this end, and while the power must remain in the State or city to modify or recall such contracts if they do not accomplish their purpose, neither the State nor the city can be allowed to disregard or recall its contract upon its mere caprice, or to gain a pecuniary advantage.

   A city made a contract with an individual, whereby it granted to him the exclusive right for five years to the use of its streets, alleys, public places and commons, for the purpose of removing the bodies of all dead animals from its streets, alleys, etc., in consideration of his agreement to promptly remove such dead bodies, and properly inter them on his own premises before creating a nuisance, and to save harmless the city from any liability on account of any nuisance. Before the expiration of five years, the city, without any cause of complaint, capriciously tired of its contract, and proposed to sell to the highest bidder the privilege it had already granted to another for a valuable consideration. *Held*—That the city was properly enjoined from selling the privilege.

2. THE EXCLUSIVE PRIVILEGE OF HAULING THE BODIES OF DEAD ANIMALS OUT OF A CITY along its streets having been granted by the city to an individual, others can not be allowed to buy up such dead animals and haul them out along the streets although the original owners have the privilege of thus removing them.

YOUNG & TRABUE FOR WIBLE AND WILLINGER.

1. The existence of the contract of Wible & Willinger with the city is established by the evidence. There is sufficient evidence of its approval by the Board of Aldermen, and the subsequent refusal of the Board to approve the minutes of the meeting at which the contract was approved could not affect its validity.

2. The contract excludes the right of owners, as well as other persons to haul carcasses through the streets.

3. Wible & Willinger acquired valuable rights by their contract which Struss & Co. are bound to respect.

4. The contract is not void because it grants an exclusive privilege, the grant being in consideration of the most valuable public services. (6 Pick., 187; State v. Fisher, 52 Mo., 174; River Rendering Co. v. Behr, 7 Mo. Ap., 345; Slaughter Houses Cases, 16 Wal.; New Orleans Gas light Co. v. Louisiana Light and Heat Producing and Manufacturing Co., U. S. S. C., Dec. 7, 1885.)

5. The contract of Wible & Willinger with the city is inviolable like other contracts, and can not be abrogated capriciously under the *pretense* of an exercise of the police power to preserve the public health. (Gregory v. Trustees, 2 Met., 598; Webb v. Commonwealth, MS. Op., Nov. 25, 1882; Commonwealth v. Douglass, MS. Op., Nov. 25, 1882; Louisville City Railway Co. v. City of Louisville 8 Bush.)

6. The doctrine of the Crescent City Case, 111 U. S., 746, does not militate against this position. (New Orleans Gas-light Co. v. Louisiana Light and Heat Producing and Manufacturing Co., U. S. S. C., Dec. 7, 1885.)

O'NEAL, JACKSON & PHELPS on same side.

1. The city of Louisville is possessed of "police power." (Greenwood v. City of Louisville, 13 Bush, 226; Pollock v. City of Louisville, 13 Bush, 221; Cooley on Const. Limit., pp. 247 and 713; Charter of City of Louisville, sec. 97.)

2. The contract of Wible & Willinger with the city is a valid and subsisting one, the exclusive privilege granted being in the clear exercise of the police power of the city. (The Slaughter House Cases, 16 Wall., 36; River Rendering Co. v. Behr, 7 Mo. Ap., 345; 6 Pick., 187; 11 Pick., 167.)

3. The right acquired by the contract is a valuable one, and the evidence shows that Wible & Willinger will be damaged if it is invaded or interfered with.

4. The journals of the two Boards of the General Council are "records," and can not be impugned or contradicted by extrinsic evidence. (Jefferson's Manual, sec. XLV.; Barret, &c., v. Godshaw, 12 Bush, 592.)

5. A declaration of the Board that what was shown on the minutes or journal of a former meeting was not its action can not impair the force of the journal.

6. The approval of the journal by the chairman of the Board is not essential to its validity.

7. The *penal* ordinance concerning dead animals can not be considered.

8. The city can not annul its contract with Wible & Willinger merely for the purpose of gain. (Gregory v. Trustees of Shelby County, 2 Met., 598; Commonwealth v. Douglass, MS. Op., Nov. 25, 1882; Commonwealth v. Whips, 80 Ky.)

J. F. BULLITT & SON and KOHN & BARKER for struss & co.

1. The contract of the city with Wible & Willinger was not executed as required by the city charter, as it was not approved by the Board of Aldermen, or, if approved at all, was not approved as required by the charter. (City Charter, secs. 1, 5, 7 and 24; City of Louisville v. Mc-Kegny, 7 Bush, 651; Covington v. Ludlow, 1 Met., 298.)

2. The contract with Wible & Willinger, even if properly executed, did not give them the right to remove dead animals owned by Struss & Co. without their consent, whether Struss & Co. owned such animals at the time of their death or afterwards purchased them from the owners. (Ordinance of May 9, 1878.)

3. According to the common law, the death of an animal caused by accident or disease does not deprive its owner of the right to dispose of it as he chooses, provided he does not allow it to become a nuisance. (River Rendering Co. v. Behr, 77 Mo., 91; Underwood v. Green, 42 N. Y., 140.)

4. An ordinance can not be repealed, altered or amended by a contract between the city and an individual.   The contract relied on in this case does not, therefore, repeal the ordinance of 1878 giving the owners of dead animals the right to remove them, and, being in conflict with that ordinance, is void.

5. As Wible & Willinger have no right, either express or implied, under their contract to convert to their own use the animals hauled by them, they can not be damaged by the actions of Struss & Co., and are, therefore, not entitled to an injunction.

T. L. BURNETT and J. F. BULLITT for city of louisville.

1. The city, in the exercise of its police powers, had the right to annul its contract with Wible & Willinger, and the court can not inquire into its motives in so doing. (Cooley's Constitutional Limitations, p. 168; Butchers' Union Co. v. Crescent City Co., 111 U. S., 746.)

2. The ordinance of 1884 makes several important changes as to the " plan " for the removal of dead animals, and is, therefore, valid

JUDGE BENNETT delivered the opinion of the court.

By agreement these two appeals, the first from the Louisville Chancery Court and the second from the Louisville Law and Equity Court, are to be heard together.   We will dispose of them by one opinion in the order in which they stand.

The appellees allege in their petition that on the 22d of November, 1883, they made a contract, in

VOL. 84.]     SEPTEMBER TERM, 1886.     293

City of Lou. v. Wible & Willinger.     Wible & Willinger v. Struss & Co.

writing, with the appellant, the city of Louisville, by which appellees agreed to promptly remove from the streets, public and private, public places, and commons and uninclosed lots, in said city, the carcasses of all dead animals, free of cost, expense or liability whatever of said city, or the owners of such animals, and properly inter them on their own premises before creating a nuisance, and to save harmless the city from any liability on account of any nuisance. In consideration whereof, the city granted to appellees the exclusive right, to the use of its public streets, etc., to remove the carcasses of all dead animals from the public and private streets, alleys, public places and commons of said city, for the term of one year, with the privilege to appellees to continue said contract for five years; that by equipping themselves, at large expense, with horses, wagons and machinery, they have complied with the terms of said contract to the letter; that, at the expiration of the first year of their term, they availed themselves of the privilege granted to them in said contract, and renewed it with the city for five years; that before the expiration of their contract with the city, it, in disregard of appellees' right under said contract, proposed to let out and sell to the highest bidder the privileges of appellees under said contract. They asked for and obtained an injunction restraining appellant from letting or selling said privilege to the highest bidder.

The appellant filed a motion in the lower court to dissolve the injunction; also a demurrer to the petition; and both having been overruled by the court, and the appellant declining to plead further, the injunction

was perpetuated; from which judgment the appellant appeals to this court.

It is contended in behalf of appellant, that as the removal of dead animal carcasses from the city, and the disposal of them, is one of the police powers of the city, necessary to be exercised at all times to preserve the public health, comfort and cleanliness of the city, she has no legal power to limit or surrender its control by contract over that subject or kindred ones beyond her recall at pleasure.

The State has never surrendered its power, some times called its police power, but more properly its sovereign power, by which it controls, through its municipalities and other agencies within certain limits, every thing within its territorial limits relating to the welfare of its people. In the exercise of that power it creates and controls educational and charitable institutions, and provides for the establishment of public highways, canals, wharves, ferries, and also the public health, public morals, and public safety, and almost numberless other things.

These powers she has and exercises in absolute right, except as limited by the Federal Constitution, or by her own fundamental law.

She may also, in the exercise of her powers, grant "exclusive separate public privileges in consideration of public services." She may also grant special or private privileges to certain individuals, provided the rights of others are not affected by it.

She has the right to confer upon cities and towns, as integral parts of the State, the exercise of such of these powers as may be deemed necessary, prudent or expedient for their local welfare and comfort.

She may also grant many exclusive privileges to persons and corporations; also relinquish many of her powers. She may also recall them at pleasure, except when the person to whom the grant is made proposes to render a public service in consideration thereof; or in case of the grant of a special private privilege, the person to whom the grant is made proposes, in consideration thereof, to engage in some enterprise that he would not or could not have otherwise done, then such grants of privileges, public and private, become contracts for a sufficient consideration, and can not be impaired by any subsequent act of the State.

The power to protect, through her cities and towns, and other public agencies, the public health, the public morals and the public safety, can not be relinquished or surrendered; for the government is bottomed upon the fundamental principle of the promotion of the peace, safety, happiness and security of its citizens. Therefore, any surrender of its power to protect the public health, the public morals, the public peace, the public safety of the citizen, would violate this fundamental principle, and tend to revolution and anarchy. The power, therefore, can not be surrendered.

The State, however, and its municipalities intrusted with the execution of this power, may provide the means of protecting the public health. It is its duty to do so, and any means may be adopted that will effect the end, such as employing competent and trusty persons to take the matter in charge under the supervision and control of the State or city.

Here, the appellant did not surrender her right to the control of the public health of the city in the re-

moval of dead animal carcasses.    She exercised that
right, as her admissions show, in an efficient and
prudent manner.    She contracted with appellee, for a
sufficient consideration, that he, for the period of five
years, should have the exclusive privilege of perform-
ing that duty for her and on her behalf.    This he did
faithfully and efficiently.    There existed no cause of
complaint on the part of the city.    Appellee kept the
city promptly cleared of carcasses, and no nuisance was
allowed to occur from them.    But the city, without
just cause or any cause of complaint, capriciously tired
of its contract, and proposed to break it.

This she could not do.    If appellee had failed to
comply with his contract, then the city would have
had the right, by ordinance, to recall it, or if it became
necessary, in the exercise of the reasonable judgment
of the city, to establish new regulations for the removal
of carcasses for the purpose of more effectively pre-
venting a nuisance arising from them, she had the
right to require the appellee to carry them out under
his contract, provided, however, such new regulations
were not inconsistent with his essential rights under
the contract.    Or if it became necessary to recall the
contract *in toto*, in order to prevent a nuisance aris-
ing from carcasses in the city, then the city had the
right to recall it.

These powers are inherent in the city upon the
fundamental principle of necessity and consequent
duty of protecting the public health of its citizens,
to which it is the duty of its employes to yield.
But to allow the city to disregard or recall its con-
tract with its contractors or employes engaged to

service by fixed terms, upon its mere caprice, or to gain a pecuniary advantage, would be the exercise of an arbitrary power that does not exist in the land.

In the case of Wible & Willinger v. J. C. Struss & Co. the record shows that appellees were in the habit of buying the carcasses of dead animals in the city from their owners, and hauling them out of the city along its streets, and using them for their own benefit. The appellants complain of this as a violation of their exclusive contract rights with the city. The appellees contend, that as the owners of these dead animal carcasses have the right to haul them out of the city along its streets, they have the right to purchase the carcasses for their own benefit from the owners, and haul them out of the city along its streets also.

The privilege of the owners of dead animal carcasses to haul them out of the city along its streets is a personal privilege, which can not be transferred to others, in view of the city ordinance, as a general business enterprise.

Also, for a person to buy up all the dead animal carcasses in the city from their owners, and then claim the right to haul them out of the city along its streets upon the pretense that they belonged to him, would be a clear evasion of the city ordinance.

Also, the appellant having contracted with the city to remove all the carcasses of dead animals in the city, and keep the city free of any nuisance arising therefrom, to allow appellees to exercise the right to haul them out along the streets and control them, would not only violate the appellee's exclusive privileges under his

contract with the city, which the city had the right to
make, but might make him responsible in damages to
the city on account of any nuisance arising from the
dead animal carcasses hauled and controlled by appel-
lees on account of any unskillful or negligent conduct
of theirs.

We are of the opinion, for the foregoing reasons,
that the lower court, in the case of Wible & Willinger
v. The City of Louisville, did right in perpetuating
the injunction against the city.

We think, in the case of Wible & Willinger v. J.
C. Struss, &c., that the court erred .in modifying the
injunction against J. C. Struss & Co. so as to allow
them to haul the carcasses along the streets which
they had purchased from others.

Wherefore, the judgment of the Louisville Chancery
Court is affirmed, and the judgment of the Louisville
Law & Equity Court is reversed, in so far as it modi-
fied Wible & Willinger s injunction against J. C.
Struss & Co., with directions to perpetuate said in-
junction according to the prayer of the petition.