STATE OF MAINE vs. WILLIAM F. ROBB, Appellant.

Cumberland.    Opinion April 14, 1905.

*Constitutional Law.    Municipal Ordinances.    Police Powers.    House Offal.*
*Removal.    Monopoly.    Const. of Maine, Art. 4, part 3, § 1.    R. S., c. 4, § 93, cl. 3.*

1.   Under a city ordinance providing that " no person shall go about collecting any house offal, consisting of animal and vegetable substances, or carry the same through any of the streets, lanes or courts of the city," except the person appointed for that purpose by the Sanitary Committee, the term house offal is held to include refuse food from the table, discarded victuals, and swill consisting of refuse from the table, though none of it be in a decayed condition.

2.   Reasonable municipal regulations for the purpose of promoting the health of the citizens are clearly within the police power of the state. Among such regulations are those for the collection and removal of refuse and offal in thickly populated cities.

3.   Reasonable municipal health regulations, under the authority of the state, are not void as taking private property without due process of law, or as a taking of private property without just compensation.

4.   A municipal ordinance which by its terms gives the exclusive privilege of collecting and removing all refuse matter constituting house offal or swill, within the city, to a person or persons specially appointed, and which prohibits all other persons from engaging in that business, is not void as creating a monopoly and as being in restraint of trade.

5.   The defendant in this case is only charged with having gone about " collecting certain house offal, consisting of animal and vegetable substances," in violation of the ordinance. The charge extends only to offal collected elsewhere than on his own premises. To that extent, at least, the prohibitory ordinance is valid.

6.   An ordinance may be valid in part and void in part, and the valid part may be carried into effect, if what remains after the invalid part is eliminated, contains the essential elements of a complete ordinance.

7.   Even if the ordinance in question here is invalid so far as it concerns the removal of offal in a proper manner by the defendant from his own premises, a question which it is not necessary to decide, the remainder of the ordinance, with a violation of which alone he is charged, is valid.

8.   Upon the admitted facts, *Held:* that the defendant is guilty, as charged.

On agreed statement.    Judgment for the State.

This was a complaint made on the ninth of September, 1903, by the City Marshal of Portland against William F. Robb of South Portland, Cumberland County, Maine, alleging that he did on the ninth day of September, A. D. 1903, at Portland in said county, "unlawfully go about collecting certain house offal consisting of animal and vegetable substances the said Robb not being then and there duly authorized and appointed thereto according to law nor then and there the deputy of any person so authorized and appointed as aforesaid." On said complaint the respondent was arrested and brought before the Municipal Court for the City of Portland on the eleventh of September, 1903. A hearing on the complaint was waived and the respondent pleaded not guilty and appealed to the Superior Court for the County of Cumberland at the January term, 1904, duly recognized and entered the appeal. The case was submitted to the Law Court on an agreed statement of facts. If according to this statement respondent has violated the City Ordinances and if the City Ordinances are constitutional, then respondent shall be adjudged guilty, otherwise not guilty.

The question also submitted is "What is house offal?"

The agreed statement of facts is fully stated in the opinion.

*Robert Treat Whitehouse*, County Attorney, for the State.

*Dennis A. Meaher*, for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

SAVAGE, J. Complaint for violation of section 17 of an ordinance of the City of Portland. The ordinance in question provides that:

"Sect. 14. All house offal, whether consisting of animal or vegetable substances, shall be deposited in convenient vessels, and be kept in some convenient place, to be taken away by such person or persons as shall be appointed by the Sanitary Committee for that purpose.

Sect. 15. All persons shall promptly deliver the offal so accumulated on their premises to the person appointed as aforesaid to receive the same. And if any person shall neglect to provide suit-

able vessels for the deposit of house offal, or shall in any way hinder or delay the person so appointed to receive it, in the performance of his duty aforesaid, he shall forfeit and pay a sum not less than two nor more than twenty dollars for each and every offense.

Sect. 16. The collection of house and fish offal, and the disposal of the same; and the cleansing of street culverts and catch basins, shall be under the charge of a committee consisting of three members of the board of mayor and aldermen, to be known as the sanitary committee; but all matters relating to privy vaults and the collection and disposal of night soil shall be under the direction of the board of health.

Sect. 17. No person shall go about collecting any house offal, consisting of animal. or vegetable substances, or carry the same through any of the streets, lanes or courts of the city, except the person appointed as aforesaid, or his deputy, under a penalty of not less than two nor more than twenty dollars for each and every offense.

The case comes up upon an agreed statement of facts which shows that the respondent "at the time of the complaint was proprietor of the Chadwick House and part of the Chase House in said Portland, and daily removed therefrom and on the day alleged in said complaint did remove therefrom to his home in South Portland, the refuse food and discarded victuals. He prepared himself with proper vessels and made proper sanitary arrangements so that in removing the same to his home there was no occasion to complain against the manner in which the removing was made or the services rendered. He was the keeper of many hogs in South Portland, probably thirty hogs and a flock of hens for which he carried the so called swill or offal. He gathered swill also from the Dairy Lunch in Portland and from the Columbia and on an average would remove four barrels in a day. All the work was done in a workmanlike manner. The swill consisted of refuse from the table including bread, meat, vegetables and broken victuals none in any decayed condition. He had been engaged in this business during about four years prior to the complaint, and was conducting said business on the day alleged therein, and prior to the time of this complaint he made application

to the Board of Health or Sanitary Committee for a license to remove the offal and also made application to the City Government of the City of Portland stating in the petition that the business was done in a workmanlike manner and subject to sanitary rules.   No license was granted him.   The offal was probably worth $8.00 a month. Mr. Robb paid $65.00 a year for the offal of the Columbia and $35.00 for the offal of the Dairy Lunch.   Mr. Robb had men working for him who attended to the details of the work.   The offal was removed in covered barrels placed on wagons and hauled out of the city.   No scatterings were allowed on the road.   The removal was made daily and in the summer time often twice a day.   The offal was used in feeding the hogs and hens and was all used up on Mr. Robb's home place.   The removal was generally in a covered cart.

Respondent has never consented to allow any other person than the one in his employ to enter his premises for the removal of house offal and those from whom he received house offal, so called, forbade others gathering house offal on their premises.

It is further agreed that a Sanitary Committee for the City of Portland was duly appointed and constituted as provided by section sixteen of the City Ordinances hereinbefore set forth and that the said William F. Robb was not on the day when said offense was alleged in said complaint to have been committed the person appointed by said Sanitary Committee for the purpose of taking away house offal, and· never has been appointed or authorized so to do by said Committee and that he was not the agent or deputy of any person so authorized and appointed as aforesaid, but that one Samuel D. Plummer was on the fifth day of June, 1903, duly appointed and authorized as the person to take away house offal as provided for in sections fourteen and fifteen of the City Ordinances of Portland hereinafter set forth, and has ever since held that position." It is stipulated that "if according to this statement the respondent has violated the city ordinances, and if the city ordinances are constitutional, then respondent shall be adjudged guilty, otherwise not guilty."

I.   Upon the first proposition there can be no difficulty.   The ordinance prohibits all persons, except the regularly appointed

scavenger, from going about collecting, or from carrying through the streets any house offal, consisting of animal or vegetable substances. The respondent admits that he removed from certain buildings or hotels in Portland, of which he was proprietor, the refuse food and discarded victuals and carried them to South Portland, also that he collected swill from the Dairy Lunch and the Columbia Hotel in Portland and removed it to South Portland, and that the swill consisted of refuse from the table, including bread, meat, vegetables and broken victuals, though none were in a decayed condition. These articles as described come within any proper definition of "house offal." The respondent in the agreed statement which was apparently prepared by his counsel denominates them as "offal." Offal is defined in the Century Dictionary as "that which is suffered to fall off as of little value or use, waste meat, waste or refuse of any kind"; in the Standard Dictionary, as "that which falls off as fragments or leavings, regarded as of trifling value," and in the 21 Am. & Eng. Ency. of Law, 830, as "waste meat, carrion, refuse; that which is thrown away as of no value or fit only for beasts." Surely under these definitions, refuse food from the table, and discarded victuals, and swill consisting of refuse from the table, are house offal. And the respondent, not being the appointed scavenger, thus violated the ordinance in question.

II. But the respondent contends that these ordinances are unconstitutional in that, they are in restraint of trade, they create a monopoly, and they constitute an unwarrantable interference with the rights of the owners of private property.

The state on the other hand says that they are a proper exercise of the police power of the state as delegated by statute to the city of Portland. The constitution of the state, Art. IV, part 3rd, sec. 1, provides that the legislature shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this state. The legislature in R. S., c. 4, sect. 93, clause 3, has provided that towns, cities and village corporations may make and enforce ordinances, "respecting infectious diseases and health." And it is not contended here but that under this statutory authority the city of Portland had the power to enact reasonable

rules and regulations for the government of persons and property within its limits so far as necessary to promote health and prevent disease. This right is generally based upon what is called the police power of the state. The warrant of the state to legislate upon the subject of health, and of the various municipal subdivisions of the state to act under the authority of the state upon the same subject, is found, under the terms of the constitution, in the police power or sovereign right of the state to provide for the safety, protection, health, comfort, morals and general welfare of the public. A much quoted definition of this power is that found in *Com.* v. *Alger*, 7 Cush. 53, at page 85, where Chief Justice Shaw said, —"The power we allude to is rather the police power, the power vested in the legislature by the constitution to make, ordain and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same. It is much easier to perceive and realize the existence and services of this power, than to mark its boundaries, or prescribe limits to its exercise." And all persons exist, and all property is held subject to that power and right. *Com.* v. *Alger*, 7 Cush. 53; *Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Stone* v. *Mississippi*, 101 U. S. 814; *Thorpe* v. *Rutland R. R. Co.*, 27 Vt. 140. All property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community. *Mugler* v. *Kansas*, 123 U. S. 623; *State* v. *Speyer*, 67 Vt. 502.

The constitutional guaranties that no person shall be deprived of life, liberty or property, without due process of law, and that no state shall deny to any person within its jurisdiction the equal protection of the laws were not intended to limit the subjects upon which the police power of a state may lawfully be exerted. *Minneapolis Railway Co.* v. *Beckwith*, 129 U. S. 26; *Jones* v. *Brim*, 165 U. S. 180. In *Barbier* v. *Connolly*, 113 U. S. 27, the court used this language: "But neither the amendment [XIVth],— broad as it is — nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe

regulations to promote the health, peace, morals, education and good order of the people." See *The Slaughter House cases,* 16 Wall. 36. Proper police regulations "though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffers injury it is either damnum absque injuria, or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure. The citizen owns his property absolutely, it is true; it cannot be taken from him for any private use whatever, without his consent, nor for any public use without compensation; still he owns it subject to this restriction, namely, that it must be so used as not to injure others, and that the sovereign authority may, by police regulations, so direct the use of it that it shall not prove pernicious to his neighbors, or the citizens generally." 1 Dillon on Mun. Corp. sect. 141. To the same effect are the decisions of this court in *Wadleigh* v. *Gilman,* 12 Maine, 403, and *Boston & Maine R. R. Co.* v. *County Commissioners,* 79 Maine, 386, in the latter of which cases this whole question is fully discussed. See also *Preston* v. *Drew,* 33 Maine, 558; *State* v. *Gurney,* 37 Maine, 156. Injurious property may be seized and confiscated. *Fisher* v. *McGirr,* 1 Gray, 1; *Train* v. *Boston Disinfecting Co.,* 144 Mass. 523.

The preservation of the health of the inhabitants is one of the most important purposes of municipal governments, so important that in England, reasonable by-laws in relation thereto have always been sustained as within the incidental authority of municipal corporations to ordain. 1 Dillon on Municipal Corp. sect. 369. And reasonable regulations for the purpose of promoting the health of the citizens are clearly within the police power of the state. Such is the law everywhere. See 1 Dillon on Municipal Corp. sects. 144, 369; cases cited in 22 Am. & Eng. Ency. of Law, 922; Cooley on Constitutional Limitations, 244. It may therefore be regarded as settled that reasonable municipal health regulations, under the authority of

the state, are not void as taking private property without due process of law, or as a taking of private property without just compensation.

But the regulations must be reasonable. They must be reasonable as to particular subject matter, and as to method of enforcement. *Jones* v. *Sanford*, 66 Maine, 585; *Austin* v. *Murray*, 16 Pick. 121. To arrive at a correct decision whether a by-law be reasonable or not, regard must be had to its object and necessity. *In re Vandine*, 6 Pick. 187. That some regulation of the collection and removal of refuse and offal in thickly populated cities is not denied. It needs no argument to show that if the disposal of matter of that sort already decayed or which will forthwith decay, be left to the will or whim or negligence, or ignorance of its owner, or of those to whom the owner may commit it for removal, the health, to say nothing of the comfort, of the public, will be seriously endangered. Ordinances or other regulations with respect to the collection and disposal of offal and garbage have frequently been before the courts, and in no case has the power and propriety of regulation been questioned, though in some cases objectionable features in the method of regulation have been discovered. To some of these cases which have been collected by the diligence of counsel reference will be made hereafter.

The question now reverts to whether the regulation adopted in this case was reasonable and lawful. By its terms it gives the exclusive privilege of collecting and removing all refuse matter constituting house offal or swill, within the city of Portland, to a person or persons specially appointed, and prohibits all other persons from engaging in that business. It even prohibits the owners upon whose premises the refuse is made, from carrying it through the streets,— no matter how carefully and safely,—to uses of their own outside of the city. That house offal has some appreciable value, we think, may be assumed, but as we have already seen, that fact does not save it from police regulation, if it is already noxious, or is in such condition as to require prompt intervention to prevent its becoming noxious and dangerous to health. *Harrington* v. *Board of Aldermen*, 20 R. I. 233, 38 L. R. A. 305. The state may even direct its destruction. *Lawton* v. *Steele*, 152 U. S. 133; *Preston* v. *Drew*, supra; *Fisher* v. *McGirr*, supra.

The respondent says that such an ordinance as this, even if it does not offend against express constitutional safeguards of property rights, is, under general common law rules, void as creating a monopoly and as in restraint of trade. The question may be viewed in two aspects, so far as this respondent is concerned, first, as respecting the prohibition which the ordinance in effect is, against the collection as vendee or agent of others of house offal, and the carrying of it through the streets of the city, that is, the prohibition of the business of scavenging house offal by anyone except the appointee of the Sanitary Committee; and secondly, the prohibition against the owner's carrying through the streets the offal made by himself.

1. Upon the first point by far the greater weight of authority supports the ordinance. In the *Slaughter House cases*, 16 Wall. 36, it was held that the grant of an exclusive right or privilege in pursuance of the exercise of the police power of the state, in the promotion of health and comfort, was not only not forbidden by the Fourteenth Amendment to the Constitution, but was clearly within the power of a state legislature and was not a monopoly at common law. The prohibition of the common law against monopolies extended only to such franchises and agreements as tended to restrict trade, and had no application to mere police regulations in the interest of public health or morality. 20. Am. & Eng. Ency. of Law, 851, and cases cited.

Of cases having direct reference to offal and garbage, and similar substances, that of *In re Vandine*, 6 Pick. 187, is a leading one. It was decided in 1828. It involved the validity of a by-law of Boston which provided that "no person shall remove, cart or carry through any of the streets . . . . of the city, any house dirt, refuse, offal, filth or' animal or vegetable substance from any of the dwelling houses . . . . in any cart, . . . . or other vehicle, unless . . . duly licensed . . . . by the mayor and aldermen upon such terms and conditions as they shall ,deem the health, comfort, convenience or interest of the city require." Vandine engaged in the business without being licensed. It would seem that the city had made an exclusive contract with some person or persons to do the work, for one of the instructions excepted to was

that in the performance of the duty of the city to remove from the streets and houses all nuisances which might generate disease, it was both reasonable and proper that it should be in the city's discretion to contract with persons to perform the work, so that it might be done on a general system. It was contended that the by-law was void as in restraint of trade and operated as a monopoly. The Court said: "Every regulation of trade is in some sense a restraint upon it; it is some clog or impediment, but it does not therefore follow that it is to be vacated. If the regulation is unreasonable, it is void; if necessary for the good government of society, it is good." And again:—"The great object of the city is to preserve the health of the inhabitants. To attain that, they wisely disregard any expense which is deemed to be requisite. They might probably have these offensive substances carried out of the city without any expense, if they would permit the people from the country to take them away at such times and in such manner as would best accommodate them. Everyone will see that if this business were thus managed, there would be continual moving nuisances at all times, and in all the streets of the city, breaking up the streets by their weight and poisoning the air with their effluvia. It is obvious, that the object and interest of the city, and those of the carmen in this concern, are extremely different. But it is contended that the city authorities may regulate strangers and unlicensed persons, in regard to the number of horses and kind of carts to be employed, just as well as they can carts and the conduct of the licensed persons. It seems to us, however, that the city authority has judged well in this matter. They prefer to employ men over whom they have an entire control by night and by day, whose services may be always had, and who will be able from habit, to do this work in the best possible way and time. *Practically* we think the main object of the city government will be better accomplished by the arrangement they have adopted, than by relying upon the labor of others, against whom the government would have no other remedy than by a suit for a breach of contract. The sources of contagion and disease will be speedily removed in small loads, which will not injure the pavements, nor

annoy the inhabitants.   We are all satisfied that the law is reasonable, and not only within the power of the government to prescribe, but well adapted to preserve the health of the city."

In *State* v. *Orr*, 68 Conn. 101, it appeared that the common council of Bridgeport had authority to regulate the collection and removal of garbage and offal.   They ordained that the board of health might contract with one or more persons for the removal, among other things, "of such refuse matter as accumulates in the preparation of food for the table,"—a good definition of "house offal" as used in the Portland ordinance.   All other persons were forbidden to collect and transport such refuse, without a permit from the board.   The defendant offered to show that he had been formerly engaged in the business of collecting and removing garbage in Bridgeport, in carts so constructed as to meet the requirements of the ordinance, that he had applied for a permit and had been refused, and that all the garbage collected by him came from certain restaurants, with the proprietors of which he had contracts for its removal, all of which was held to have been properly excluded.   The court, after stating that "refuse matter" as the term was used in the ordinance, can embrace nothing which has not been refused or rejected as unsuitable for table use, that it may be thus rejected because it has little or no value for human food, that it must in its nature be perishable, and can include little which is not liable to become decomposed or offensive, if left where it falls, decided that by the granting of an exclusive privilege for the removal of such matter, "no monopoly was created by which the common law rights of citizenship would be infringed upon."   And further:   "It was a violation of the ordinance to collect and transport the kitchen refuse which was its subject, whether such of it was being transported at the time of the act complained of was noxious or innoxious.   It was enough that it was "such refuse matter as accumulates in the preparation of food for the table.   There is so much of this kind of matter that is offensive and dangerous to the health of the community, that all may be properly made the subject of public supervision and control   .   .

.   .   Any occupation comes within the range of the police power which is such as to be naturally liable to create a nuisance, unless

subjected to special regulations; whether it be so conducted as, in fact, to create a nuisance, or not. The prevention of nuisances is quite as important as their abatement." See *Harrington* v. *Board of Aldermen,* supra.

In *Grand Rapids* v. *DeVries,* 123 Mich. 570, under an ordinance authorizing it, the city had contracted with one person, giving him an exclusive right to collect and remove garbage and offal. The ordinance denied the right to all others. The defendant engaged in the business of collecting garbage in violation of the ordinance. He objected that the ordinance created a monopoly and tended to restrain trade. The court said: — "The gathering of garbage is not a trade, business or occupation in any proper sense, and such employment does not come under the doctrine in reference to monopolies, or in reference to legislation in restraint of trade. It is a matter in which the public agencies are authorized to pursue the best means to protect the public health". . . . . "The ordinance is one of the police regulations of the city for the benefit of the public health."

In *Walker* v. *Jameson,* 140 Ind. 591, the court held that an ordinance under which an exclusive contract was made for the collection and removal of garbage was a mere sanitary regulation, and not an attempt to create a monopoly. Among other things, the court said: "We recognize the rule that a municipal corporation has no power to treat a thing as a nuisance which cannot be one, but it is equally well settled that it has the power to treat as a nuisance a thing which from its character, location and surroundings, may or does become such." . . . . "It may be that the hotel and restaurant keepers will lose money on their garbage under the workings of this contract, where they before derived a revenue, but if, under this plan, the sources of contagion and disease will be more speedily and effectively removed, the city was empowered to make this contract."

To the same effect are *Smiley* v. *MacDonald,* 42 Nebraska, 5; 27 L. R. A. 540; *Coombs* v. *MacDonald,* 43 Nebraska, 632; *Louisville* v. *Wibble,* 84 Ky. 290; *State* v. *Payssan,* 47 La. Ann. 1029; *Ouray* v. *Corson,* 14 Colo. App. 345; *Morgan* v. *Cincinnatti,* 9 Ohio Dec. 280; *State* v. *Lowery,* 49 N. J. Law, 391; *Swift* v. *New York,* 83

N. Y. 528; *Boehm* v. *Baltimore*, 61 Md. 259. See also Dillon on Municipal Corporations, sect. 369, and 2 Beach on Corporations, sect. 995. In *Iler* v. *Ross*, (Neb.) 57 L. R. A. 895, an ordinance by virtue of which an exclusive contract was given to one person for the removal of all garbage, filth and other noxious and unwholesome substances, ashes, stable manure, rubbish and other waste and refuse matter was sustained as to dead animals, garbage and other noxious substances. But it was held that as to ashes, rubbish and other innoxious substances it was invalid. The court said: — "Such attempted regulation is, in our judgment, unreasonable, oppressive and contrary to sound public policy. The ordinance not only grants a monopoly, always odious in the eye of the law, without justification or necessity therefor, as a sanitary measure for the protection and preservation of the public health, comfort and welfare, but it is also an unwarranted invasion of the natural rights of the inhabitants of the city."

Our attention has been called to only two cases which may fairly be said to be to the contrary. All the other cases cited by the defendant are distinguishable. In the case of *In re Lowe*, 54 Kansas, 757, 27 L. R. A. 545, while it was admitted that monopolies may be upheld when deemed necessary in executing a duty incumbent on the city authorities or the legislature for the protection of the public health, the court held that an ordinance which gave to scavengers the exclusive privilege of cleaning privy vaults and cesspools, and of removing garbage, not only from the streets, but from the private premises of the citizens, and which in terms prohibited the owners from performing these services for themselves, created an unlawful monopoly and was invalid. In *River Rendering Co.* v. *Behr*, 77 Mo. 91, an ordinance which undertook to confer upon one person the right to remove and convert to his own use the carcasses of all dead animals, not slain for food, found in the city, to the exclusion of the right of the owners to remove and use them before they became a nuisance, was declared to be invalid, as authorizing the taking of private property for private use, and as depriving the owner of property without due process of law.

Upon a review of all the authorities, we conclude that the rule most consonant with authority as well as with reason is, that a city in the exercise of the police power granted to it by the state may, by reasonable ordinance, regulate the collection and disposal of substances within the city, which are of such a condition and of such a character as to be nuisances per se, and deleterious to the public health or comfort, or which are liable to become nuisances and noxious and deleterious, unless immediate care is taken to prevent their becoming so. We think that a city may prevent conditions injurious to health as well as abate them. It does not create an unlawful monopoly, or unlawfully restrain trade to commit the business of collecting and disposing of such substances to one person, and to exclude all others from such business. That it is reasonable to so limit the business appears clearly we think from the reasons assigned in *In re Vandine,* supra, which we have quoted. We think "refuse food and discarded victuals," and "swill consisting of refuse from the table including bread, meat, vegetables and broken victuals" are not only "house offal," as we have already said, but from their character and condition, if not already decayed, noxious and deleterious to health, are extremely liable to become so unless promptly taken care of. Hence the city may lawfully commit the business of their collection and disposal to one person, and forbid others to collect and carry away the same.

2.    But the respondent contends that the ordinance in terms is so comprehensive as to prohibit the owner of premises upon which is created offal, consisting of "table refuse and discarded victuals" not then in a decayed or noisome condition, from removing it through the streets, and out of the city, and that such offal is property, and, that in such quantities at least as are produced in hotels such as the respondent's, it has considerable pecuniary value. He urges that no necessity is shown which justifies any such interference with the rights of property, and hence that the ordinance is, in this respect, unreasonable and destructive of constitutional property rights.

But that question does not arise in this case. The respondent is not charged with having carried through the streets offal made upon his own premises, but with having gone about "collecting certain

house offal, consisting of animal and vegetable substances." This has no reference to offal made on his own premises. It has reference to offal collected elsewhere. And the collection of such offal falls within the reasonable prohibition of the ordinance.

Now, if it were true as claimed, concerning which we express no opinion, that the ordinance is invalid in respect to the removal of house offal by the respondent from his own premises, still, we think it can be enforced as to the offal purchased from others and removed by him. A by-law or ordinance, like a statute, may be valid in part and void in part. Where it consists of several distinct or separable parts or provisions, the invalidity of one or more of these will not render the entire ordinance void. 21 Am. & Eng. Ency. of Law, 993. Thus where an ordinance contains two separate prohibitions of different acts, or a prohibition applying to different classes of objects, it may be valid as to one, and invalid as to the other. Such was *Iler* v. *Ross*, supra, where an ordinance was held valid as to garbage and offal, and invalid as to ashes and rubbish. So where two distinct penalties are affixed, one of which is invalid, the other may be applied. Dillon on Municipal Corporations, sect. 421. *Com.* v. *Dow*, 10 Met. 382. If the part of a by-law or statute which is valid can be separated from that which is void, and carried into effect, it may be. *Amesbury* v. *Bowditch M. F. Ins. Co.*, 6 Gray, 596. But it is necessary that the good and bad parts be so distinct and independent that the invalid parts may be eliminated, and what remains constitute the essential elements of a complete ordinance. *Passaic Water Co.* v. *Paterson*, 65 N. J. Law, 472; *State* v. *Hoboken*, 38 N. J. Law, 110; *State* v. *Webber*, 107 N. C. 962. See note to *Eureka City* v. *Wilson*, (Utah), 62 Am. St. Rep. 910; *Fisher* v. *McGirr*, 1 Gray, 1; *Warren* v. *Charlestown*, 2 Gray, 84.

In Cooley on Const. Lim. the author says, "Where therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have

missed the one without the other.    The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall.    The point is not whether they are contained in the same section; for the distributions into sections is purely artificial; but .whether they are essentially and inseparably connected in substance.    If when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained.    .    .    .    .    If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other."

In the case at bar the second clause in sect. 17 of the ordinance, "Or carry the same through any of the streets" etc., is in the alternative.    If this clause be stricken out as invalid on the ground that it is an unreasonable interference with property rights, that which remains is complete in itself.    It is the remaining provision which is found in the complaint, and it is independent of the provision omitted from the complaint.    We think it should be sustained.    In accordance with the stipulation, the entry will be

*Judgment for the State.*